717 N.W.2d 216 (2006)
2006 WI 91
Robert W. BARTHOLOMEW, Individually and as Special Administrator of the Estate of Helen Bartholomew, Plaintiff-Appellant-Petitioner,
v.
WISCONSIN PATIENTS COMPENSATION FUND AND COMPCARE HEALTH SERVICES INSURANCE CORPORATION, Defendants-Respondents,
Prakash Shah, M.D. and The Medical Protective Company, Defendants.
No. 2004AP2592.
Supreme Court of Wisconsin.
Argued April 5, 2006.
Decided July 7, 2006.
*218 For the plaintiff-appellant-petitioner, there were briefs by Timothy J. Aiken, James C. Gallanis, and Aiken & Scoptur, S.C., Milwaukee; Paul Gagliardi and Gagliardi, O'Brien, Olson & Capelli, Salem, and oral argument by Timothy J. Aiken.
For the defendant-respondent Wisconsin Patients Compensation Fund, there was a brief by Steven P. Means, Roisin H. Bell, Michael A. Hughes, and Michael Best & *219 Friedrich LLP, Madison, and oral argument by Steven P. Means.
An amicus curiae brief was filed by William C. Gleisner, III and Law Offices of William C. Gleisner III, Milwaukee; Lora A. Kaelber and Gray & End LLP, Milwaukee; Linda Meagher and Habush Habush & Rottier SC, Milwaukee on behalf of the Wisconsin Academy of Trial Lawyers.
¶ 1 SHIRLEY S. ABRAHAMSON, C.J.
This is a review of a decision of the court of appeals summarily affirming the judgment and order of the circuit court for Kenosha County, Wilbur W. Warren III, Judge.[1] This lawsuit arose because Helen Bartholomew died as a result of medical malpractice, leaving her husband, Robert Bartholomew, surviving. The plaintiff is Robert Bartholomew individually and as special administrator of the Estate of Helen Bartholomew. The defendants are the Wisconsin Patients Compensation Fund,[2] Compcare Health Services Insurance Corporation, Doctor Prakash Shah, and the Medical Protective Company.[3]
¶ 2 The issue in the present case is whether the following awards collectively are limited to the maximum allowed under the cap on wrongful death actions: the jury award for noneconomic damages to the estate of Helen Bartholomew for her predeath pain, suffering, and disability; the jury award to Robert Bartholomew for noneconomic damages for the predeath loss caused by his wife's disability; and the jury award to Robert Bartholomew for noneconomic damages for his postdeath loss of his wife's society and companionship.
¶ 3 The issue, in other words, is whether the court should adhere to Maurin v. Hall, 2004 WI 100, 274 Wis.2d 28, 682 N.W.2d 866, which held that when a victim of medical malpractice dies, the cap for wrongful death actions limits all noneconomic damages.[4] A majority of the court, namely the author of this opinion and Justices Bradley, Crooks, and Butler, concludes that Maurin was wrongly decided and must be overturned. Justice Butler so decides on different grounds from those stated in this opinion.
¶ 4 In addition, a majority of the court, the same four justices, agrees that the estate of Helen Bartholomew is entitled to the full $500,000 award for Helen Bartholomew's predeath pain and suffering, that Robert Bartholomew individually is entitled to the full $350,000 award for his noneconomic damages for his predeath loss of his wife's society and companionship, and that Robert Bartholomew individually is entitled to the full $350,000 award for his postdeath loss of his wife's society and companionship (wrongful death loss of society and companionship). Justice Butler reaches this result on different grounds.
¶ 5 Three justices, namely the author of this opinion and Justices Bradley and Crooks, join this lead opinion.
¶ 6 The challenge to Maurin in the present case is not to that part of Maurin *220 holding that, when medical malpractice results in death, the wrongful death cap[5] applies to a claimant's noneconomic damages for postdeath loss of society and companionship. Nor is any challenge made in the instant case to the constitutionality of applying the wrongful death cap to a claimant's noneconomic damages for postdeath loss of society and companionship in a medical malpractice case.[6] The present case therefore leaves undisturbed that part of Maurin that holds the wrongful death cap applicable to a claimant's noneconomic damages for postdeath loss of society and companionship in a medical malpractice action.
¶ 7 To better understand the issue presented, this opinion sets forth the jury award for the noneconomic damages and the circuit court's application of a cap.
¶ 8 The jury awarded a total of $1,200,000 for noneconomic damages as follows:
 $500,000 to the estate of Helen Bartholomew for her noneconomic damages for predeath pain and suffering;
 $350,000 to Robert Bartholomew individually for his noneconomic damages for his predeath loss of his wife's society and companionship; and
 $350,000 to Robert Bartholomew individually for his noneconomic damages for his postdeath loss of his wife's society and companionship.
¶ 9 On July 1, 2004, the circuit court issued a written decision, holding that the noneconomic damages were limited to the cap provided by the medical malpractice cap statute,[7] that is, Wis. Stat. § 893.55(4)(d). At that time § 893.55(4)(d) capped medical malpractice damages at $422,632. The circuit court thus reduced the $1,200,000 total damage award for noneconomic damages to $422,632, as the defendants requested.
¶ 10 On July 2, 2004, Maurin was mandated. In Maurin, the court held that when a victim of medical malpractice dies, all noneconomic damages are capped by the wrongful death cap.
¶ 11 After this court issued its decision in Maurin, and upon motion of the defendants, the circuit court revised its judgment to comply with Maurin and reduced the three jury awards for noneconomic damages collectively to $350,000, the wrongful death cap. As a result of the revised judgment, Robert Bartholomew argues that in effect he received his entire award for noneconomic damages for his claim for his postdeath loss of his wife's society and companionship ($350,000), but he received nothing for his predeath claim for his loss of his wife's society and companionship and the estate received nothing for five years of Helen Bartholomew's predeath pain and suffering.
¶ 12 Relying on Maurin, the court of appeals summarily affirmed the revised judgment.
¶ 13 Robert Bartholomew challenges Maurin as erroneously holding that the wrongful death cap on noneconomic damages applies not only to noneconomic *221 damages for claims for postdeath loss of society and companionship, but also to noneconomic damages for his claim as special administrator of Helen Bartholomew's estate for Helen Bartholomew's predeath pain and suffering and to Robert Bartholomew's individual claim for noneconomic damages for the predeath loss of society and companionship.
¶ 14 Again, Robert Bartholomew does not challenge Maurin's application of the wrongful death cap to his noneconomic damages for his postdeath loss of his wife's society and companionship. Rather, he asserts that his awards of noneconomic damages for predeath claims are governed by the medical malpractice cap established in § 893.55(4)(d), namely $422,632.[8] Because the medical malpractice cap in § 893.55(4)(d) was declared unconstitutional in Ferdon v. Wisconsin Patients Compensation Fund, 2005 WI 125, 284 Wis.2d 573, 701 N.W.2d 440, Robert Bartholomew argues that for the purposes of the instant action no cap exists on his award of noneconomic damages for predeath claims.[9]
¶ 15 The defendants contend that Maurin was correctly decided and is settled law and that the court should adhere to the Maurin decision and affirm the decision of the court of appeals in the present case.
¶ 16 Four justices, namely the author of this opinion and Justices Bradley, Crooks, and Butler, agree with Robert Bartholomew that Maurin must be overturned. Three justices, namely the author of this opinion and Justices Bradley and Crooks, agree with the position advocated by Robert Bartholomew, which is the position taken by the concurring opinion in Maurin.[10] These three justices, in this opinion, conclude that Maurin's interpretation of Wisconsin's medical malpractice and wrongful death statutes as imposing a single global wrongful death cap on all noneconomic damages is flawed because it fails to take into account the well-established distinction in Wisconsin tort law between actions for noneconomic damages for predeath claims and a "wrongful death" claim, that is, a claim for noneconomic damages for postdeath loss of society and companionship. This opinion concludes that the legislature adopted two caps that apply in the event of death resulting from medical malpractice: a medical malpractice cap for noneconomic damages for predeath claims and a wrongful death cap for noneconomic damages for postdeath claims. Claimants may thus recover for these two types of *222 claims up to the limits of each applicable cap. Justice Butler, writing separately, concludes that there is a "global" cap in medical malpractice cases, but, unlike the Maurin majority, concludes that the "global" cap is the medical malpractice cap, not the wrongful death cap.[11]
¶ 17 The conclusions in this opinion are compelled by the principles of tort law, the text of the medical malpractice and wrongful death statutes and the statutory and legislative histories, and the policy the legislature enunciated in enacting Wis. Stat. § 893.55(4)(f), namely to place medical malpractice wrongful death claims "on the same footing" as wrongful death claims in other tort actions.[12]
¶ 18 Accordingly, four justices, namely the author of this opinion and Justices Bradley, Crooks, and Butler, reverse the decision of the court of appeals and overturn any contrary holding in Maurin. We remand the matter to the circuit court to reinstate each jury award for noneconomic damages, though Justice Butler reaches this result on different grounds. The analysis in this opinion is presented as follows:
¶ 19 I. The facts.
¶ 20 II. The standard of review.
¶ 21 III. The decision to overturn Maurin in light of considerations of stare decisis.
¶ 22 IV. A review of tort law treating noneconomic damages for predeath claims differently from noneconomic damages for postdeath claims.
¶ 23 V. An examination of the text of the applicable medical malpractice and wrongful death statutes and their statutory and legislative histories to establish that the legislature did not create a single wrongful death cap for both pre- and postdeath claims when the medical malpractice results in death. Rather, the legislature adopted two caps: a medical malpractice cap for noneconomic damages for predeath claims and a wrongful death cap for noneconomic damages for postdeath claims. Claimants can thus recover each type of damages under the applicable cap.
¶ 24 VI. An examination of an alternative interpretation of the cap statutes allowing claimants to choose between bringing an action for noneconomic damages for predeath claims or bringing an action for noneconomic damages for postdeath claims.

I
¶ 25 The following facts are undisputed. This case arises out of a claim for medical malpractice in the treatment of Helen Bartholomew. The specifics of Helen Bartholomew's medical treatment and resultant injuries are not relevant to the issue before the court, and this opinion will therefore only briefly discuss the medical aspects of her case.
¶ 26 In December 1998, the defendant doctor treated Helen Bartholomew for chest pain, arm and shoulder pain, shortness of breath, sweating, and fainting feelings. She returned to work a few days later and, that evening, suffered a heart attack. The heart attack resulted in substantial physical deficiencies and brain damage such that Helen Bartholomew was never able to return home. Largely bedridden and with a substantially decreased quality of life, she lived the rest of her life in a nursing home until she passed away in *223 October 2003, nearly five years after the heart attack.
¶ 27 A complaint was filed in 2001 (prior to Helen Bartholomew's death) claiming that her injuries resulted from medical malpractice. Following Helen Bartholomew's death, Robert Bartholomew, as special administrator of his wife's estate, was substituted as a plaintiff for Helen Bartholomew.
¶ 28 On April 4, 2004, the jury returned a verdict, finding that negligence by one of the defendant doctors was the cause of Helen Bartholomew's injuries and death and awarding noneconomic damages as described above. The circuit court ultimately ordered the awards to comport with the Maurin decision.
¶ 29 Robert Bartholomew filed a notice of appeal with the court of appeals on September 28, 2004. On July 14, 2005, this court issued the Ferdon decision. In response to Ferdon, Robert Bartholomew moved the court of appeals to allow supplemental briefing or, in the alternative, to certify the cause in the present case to this court. On August 24, 2005, the court of appeals issued an order summarily denying the motion for supplemental briefing or certification and affirming the judgment of the circuit court, stating that it did not have the authority to overrule Maurin. Robert Bartholomew filed a petition for review, which was granted.

II
¶ 30 The issue in the present case involves the interpretation and application of medical malpractice statutes and the wrongful death statute. The interpretation of and application of a statute to undisputed facts ordinarily present questions of law that this court decides independently of the circuit court and court of appeals but benefiting from their analyses.

III
¶ 31 This opinion first explores the advisability of overturning Maurin. Stare decisis, let the decision stand, is a basic tenet of law. "This court follows the doctrine of stare decisis scrupulously because of our abiding respect for the rule of law."[13] Stare decisis contributes to the integrity of the judicial process. Nonetheless, "stare decisis is not a mechanical formula for adherence to the latest decision," and a court should, in applying the doctrine of stare decisis, overturn its own decisions when the situation calls for such a measure.
¶ 32 Any departure from the doctrine of stare decisis, however, demands special justification.[14] "No change in the law is justified by a change in the membership of the court or a case with more egregious facts."[15]
¶ 33 Five factors typically contribute to a decision to overturn prior case law. This court is more likely to overturn a prior decision when one or more of the following circumstances is present: (1) Changes or developments in the law have undermined the rationale behind a decision; (2) there is a need to make a decision correspond to newly ascertained facts; (3) there is a showing that the precedent has become detrimental to coherence and consistency *224 in the law; (4) the prior decision is "unsound in principle;" or (5) the prior decision is "unworkable in practice."[16]
¶ 34 Furthermore, "the decision to overrule a prior case may turn on whether the prior case was correctly decided and whether it has produced a settled body of law."[17] A court must keep in mind that it does "more damage to the rule of law by obstinately refusing to admit errors, thereby perpetuating injustice, than by overturning an erroneous decision."[18]
¶ 35 This opinion concludes that these factors are sufficiently implicated in the present case to justify our overturning Maurin.[19]
¶ 36 First, Maurin is unsound in principle and was wrongly decided. The Maurin opinion was, as this opinion shall explain further, founded upon an ill-fitted analysis of what a wrongful death action is and a failure to fully understand and explain the distinction between noneconomic damages for postdeath loss of society and companionship and noneconomic damages for predeath claims. A decision based on a faulty interpretation of over 150 years of case law is "unsound in principle." The bottom line is that there was no basis in Maurin for rolling both the postdeath and predeath claims into the wrongful death cap.
¶ 37 Second, Maurin has not produced a settled body of law. Only three members of this court would decide the instant case in accordance with Maurin. The other members of the court have concluded that it is not appropriate to impose a single wrongful death cap globally to limit all noneconomic damages in all medical malpractice cases resulting in death.
¶ 38 The Maurin holding is perhaps best explained as resulting from a concern with the equities of the substantial medical malpractice award for Shay Leigh Maurin's predeath pain and suffering when the child survived for less than 48 hours and was unconscious some of that time.[20] In the instant case, the equities are obviously different; the medical malpractice victim survived for almost five years.
¶ 39 Instead of overturning Maurin, Maurin might be limited to its facts. Limiting Maurin to its facts rather than overruling it is not a good idea.
¶ 40 No workable rule for applying caps based on the length of time the medical malpractice victim survives appears evident. Should the court adopt an arbitrary bright-line survival rule? Or should the court determine, on a case-by-case basis, whether the victim has survived a sufficiently long time to avoid the Maurin decision?
¶ 41 This opinion agrees with Robert Bartholomew and the defendants that nothing in the statutes or case law distinguishes between tort victims (including medical malpractice tort victims) who survive *225 a very short period of time and those who survive for a longer period for purposes of applying the caps. This opinion further agrees with the parties that whatever caps apply to those who survive only a short time (such as Shay Leigh Maurin) should be the same caps that apply to those who survive for several years (such as Helen Bartholomew). Unable to identify in the statutory text, case law, or public policy any distinction regarding length of survival as governing the applicable cap, this opinion declines to limit Maurin to its facts. Predictability and certainty are best achieved by applying the same caps regardless of how long the medical malpractice victim survives, even though the amount of damages a victim suffered might depend on the length of time the victim survives.
¶ 42 The Maurin majority's concern about the high award for noneconomic damages for Shay Leigh Maurin's predeath pain and suffering was and remains misplaced. Remittitur is the way to address inappropriately high awards for predeath claims.[21]
¶ 43 Third, the Maurin holding is difficult to apply. For example, when different claimants are entitled to separate awards for noneconomic damages, Maurin does not determine how the caps should be allocated to the various claimants. For example, applying Maurin to the instant case, the circuit court declared without explanation that the jury award of $500,000 for the noneconomic damages sustained by Helen Bartholomew prior to her death would not be awarded to the estate.[22] As a result of the circuit court's revised judgment, Robert Bartholomew received a total of $350,000. The jury awarded him $350,000 for predeath loss of society and companionship and $350,000 for postdeath loss of society and companionship. The circuit court did not determine whether the $350,000 wrongful death cap applied to the $350,000 jury award for his postdeath claim for loss of society and companionship or to the $350,000 jury award for his predeath claim for loss of society and companionship or was allocated in to each. Allocation of the cap to the awards in the present case may not have been important, but an allocation is important when different claimants have separate awards.
¶ 44 Fourth and finally, this opinion observes that Maurin's application of the wrongful death cap to predeath claims may be constitutionally suspect. The constitutionality of the caps analyzed in the Maurin majority is suspect for several reasons.
¶ 45 First, Maurin's constitutional discussion focuses entirely on the constitutionality of caps in wrongful death claims, that is, caps on noneconomic damages for postdeath claims for loss of society and companionship.[23] But then in conclusory fashion, Maurin applies this constitutional discussion to its expanded and erroneous *226 view that wrongful death claims encompass noneconomic damages for predeath claims.[24]
¶ 46 Second, the Maurin decision may have the impermissible effect of creating an unconstitutionally low cap for noneconomic damages for predeath claims. In Ferdon, the court held that the $350,000 cap on noneconomic damages in medical malpractice actions (adjusted for the consumer price index) set forth in Wis. Stat. § 893.55(4)(d) (2003-04) is unconstitutional under the Wisconsin Constitution.[25] The cap was unconstitutional because it was not rationally related to the legislative objectives proffered: lowering medical insurance premiums, lowering health care costs, and avoiding a health care crisis.[26]
¶ 47 Ferdon was not a wrongful death case; the victim of medical malpractice survived. Ferdon did not address Wis. Stat. §§ 893.55(4)(f) and 895.04(4), the statutory provisions addressed in Maurin. The Ferdon reasoning may, however, affect the Maurin decision to the extent it applied the wrongful death cap to the recovery of noneconomic damages for predeath claims.
¶ 48 Applying the wrongful death cap to the recovery of noneconomic damages for predeath claims is not rationally related to the legislative objectives for capping medical malpractice awards. Furthermore, the rationality of the law of medical malpractice is compromised when a medical malpractice victim sustains serious injury but survives and is subject to no cap on noneconomic damages, while a victim who is fatally injured and suffers for years before death resulting from medical malpractice is limited in noneconomic damages for predeath claims to the $350,000 wrongful death cap.
¶ 49 The defendants contend that the court's language in Ferdon, 284 Wis.2d 573, ¶¶ 16, 35-36, 701 N.W.2d 440, forecloses any analysis in the present case of the constitutionality of the wrongful death cap. As explained previously, this opinion does not address in the instant case the constitutionality of the wrongful death cap as applied to wrongful death damages properly understood, namely noneconomic damages for postdeath loss of society and companionship. As the court of appeals properly explained, Ferdon did not abrogate Maurin, and the court made clear in Ferdon that Maurin's discussion of the constitutionality of the wrongful death cap did not control the Ferdon case. Ferdon addressed other issues; it did not determine the constitutionality of Maurin's global cap.
¶ 50 That the holding in Maurin applying the wrongful death cap to noneconomic damages for predeath claims, however, may raise constitutional concerns under Ferdon is reason to be wary of this part of the Maurin decision.
¶ 51 For the reasons set forth, this opinion, joined by Justice Butler, concludes that Maurin's holding that the wrongful death cap in Wis. Stat. § 895.04(4) is the single cap to be applied globally to all noneconomic damages when a victim of medical malpractice action dies should be overruled, notwithstanding stare decisis.

IV
¶ 52 This opinion turns now to discuss claims for wrongful death, that is, claims for noneconomic damages for postdeath loss of society and companionship, Wis. *227 Stat. §§ 895.03 and 895.04, and other claims relating to the death of a tort victim. Time is spent on drawing this distinction because the Maurin majority opinion erred by failing to appreciate the distinction between these types of claims.
¶ 53 Both the present case and Maurin address the application of damage caps to postdeath loss of society and companionship (noneconomic damages in wrongful death claims) and to predeath pain and suffering of the victim of the tort.[27]
¶ 54 The distinction between a claim for noneconomic damages for postdeath injuries (wrongful death) and claims for noneconomic damages for a victim's predeath pain and suffering is well established in Wisconsin law. The two claims are separate claims for separate injuries that may belong to different people. As the court has stated, one cause of action begins where the other ends.[28] The two claims for noneconomic damages, those for the victim's predeath injury and those for a family member's postdeath injury, do not provide a double recovery, "but a recovery for a double wrong."[29]
¶ 55 A wrongful death claim refers to the statutory cause of action belonging to named persons for injuries suffered postdeath.[30]
¶ 56 As is observed in Prosser and Keaton on the Law of Torts, at English common law there was no civil action against an individual for wrongfully killing another.[31] Wisconsin apparently followed this rule prior to the adoption of the first wrongful death statute in 1857.[32] A wrongful death claim is a new cause of action unknown at common law.[33]
¶ 57 Furthermore, at common law, many claims did not survive the death of the victim or the tortfeasor.[34] The rule of non-survival of actions was referred to at common law by its Latin name, action personalis moritur cum persona, a personal action dies with the person.[35] Prior to the adoption of a survival statute,[36] the common *228 law rule of non-survival of actions was generally followed in Wisconsin.[37] At common law, a victim's claim for predeath pain and suffering did not survive the victim's death.[38]
¶ 58 Noneconomic damages for the victim's predeath pain and suffering survive the victim's death under the survival statute and are referred to as survival actions.[39] "The survival action . . . is not a new cause of action. It is rather the cause of action held by the decedent immediately before or at death, now transferred to his personal representative."[40]
¶ 59 Claimants recovering under a wrongful death claim and claimants recovering under a survival claim for predeath pain and suffering may, but need not, be the same person. A wrongful death claim is brought by or on behalf of the statutorily named beneficiary.[41] The personal representative of the victim's estate brings a survival action for a victim's predeath pain and suffering; any recovery is disbursed according to the relevant testate or intestate laws.[42]
¶ 60 The defendants support the Maurin decision, arguing that the phrase "wrongful death" in the medical malpractice statutes refers not to a specific cause of action, namely noneconomic damages for loss of society and companionship, but, rather, to any cause of action seeking noneconomic damages when medical malpractice results in death. Nothing in the text of the medical malpractice statute (§ 893.55(4)(f)) or the statutory and legislative histories signals that the phrase "wrongful death" means anything other than its usual meaning in the statutes, namely postdeath claims.
¶ 61 This court's case law has recognized the distinction between wrongful death and survival actions dating back until at least 1868.[43]
¶ 62 The earliest case in which this court explained the distinction is Brown v. Chicago & Northwestern Railway Co.,[44] in which the court stated that wrongful death and survivor actions "refer to entirely distinct losses recoverable in different rights: the one in the right of the deceased for the loss occasioned to him; the other in the right of the surviving relatives for the loss to them. Both are dependent on the injury, but only one dependent on the death with surviving relatives to take under the *229 statute."[45] The Brown court refused to adopt the Railway Company's interpretation of the statutes (reminiscent of Maurin's interpretation of the statutes) that the wrongful death statute encompasses all claims when death results and the survival statute applies only to cases in which death does not ensue from the injury.[46]
¶ 63 The distinction between wrongful death and a victim's predeath claim for pain and suffering has been accepted in Wisconsin case law; Maurin appears to be the only exception.[47]Maurin erred in conflating a wrongful death and a survival action and subjecting both to the wrongful death cap.
¶ 64 In Maurin only two types of claims, wrongful death (claim of a family member for postdeath loss of society and companionship) and survival (claim of the victim for predeath injury), were present. In the present case, however, another type of predeath claim for noneconomic damages is present, namely, a claim for a family member's noneconomic damages for predeath loss of society and companionship.[48]
¶ 65 Maurin did not address this latter predeath claim because no claim for predeath loss of society and companionship was made in that case. Nevertheless, Maurin's categorical holding that the wrongful death cap applies to all noneconomic damages in the event of death may very well cover this kind of predeath claim for loss of society and companionship.
¶ 66 Claims for predeath noneconomic damages for loss of society and companionship are similar to survival actions in that *230 both refer to a predeath claim that may be asserted after the victim dies. In the medical malpractice context, predeath loss of society and companionship is listed in Wis. Stat. § 893.55 as an element of noneconomic damages a jury may award in a medical malpractice case.[49]
¶ 67 Claims for noneconomic damages for predeath loss of society and companionship are easily distinguishable from claims for noneconomic damages for postdeath loss of society and companionship (wrongful death). "In contrast [to wrongful death], the common-law right of spouses to bring an action for loss of consortium compensates injuries to a spouse during the period of the injured spouse's disability."[50]
¶ 68 Unlike wrongful death, which is a statutory claim, a claim for a husband's loss of his wife's society and companionship upon the wife's injury existed at common law.[51] Though these claims for loss of society and companionship originally were limited to a husband's claim for a wife's disability, the doctrine has been expanded to claims upon injury to a husband, child, or parent.[52]
¶ 69 Claims for predeath loss of society and companionship survive the death of the victim of the underlying tort and may be brought in addition to wrongful death claims for postdeath loss of society and companionship.[53]
¶ 70 On the basis of this analysis of the types of claims made in the present case, this opinion, joined by Justice Butler, concludes that the implication in Maurin that a claim for predeath noneconomic damages for loss of society and companionship should be combined with a claim for postdeath noneconomic damages for loss of society and companionship (wrongful death) is just plain wrong.
¶ 71 Having established that survival actions, predeath claims for loss of society and companionship, and wrongful death actions are separate causes of action with *231 possibly different claimants, this opinion turns now to the medical malpractice statutes and wrongful death statutes and applies these statutes to the present case.

V
¶ 72 In Maurin, this court set forth three possible interpretations of the statutes governing medical malpractice and wrongful death caps when a victim of medical malpractice dies.
¶ 73(1) Two caps apply when medical malpractice results in death: (a) The wrongful death cap limits noneconomic damages for postdeath claims,[54] and (b) the medical malpractice cap, if any, limits noneconomic damages for predeath claims.[55] The claimants recover the damages governed separately by each cap. (This position was advocated by the plaintiffs in Maurin,[56] and again by Robert Bartholomew in the instant case. It was adopted by the concurring opinion in Maurin[57] and is adopted in this opinion).
¶ 74(2) A single cap limits all noneconomic damages in medical malpractice cases regardless of whether the medical malpractice results in death. The cap on all noneconomic damages is the medical malpractice cap in § 893.55(4)(d). Noneconomic damages for postdeath loss of society and companionship (that is, the wrongful death claim) are further limited to the amount stated in § 895.04(4). (This position was advanced by the defendants in Maurin and is adopted by Justice Butler in the instant case.)
¶ 75(3) A single cap limits all noneconomic damages when medical malpractice results in death. The cap is the wrongful death cap in Wis. Stat. § 895.04(4). (This position was adopted by the Maurin majority opinion, by the circuit court's revised judgment filed after Maurin was mandated, and by the court of appeals in the instant case. This position is also advanced by the defendants and Justice Roggensack's opinion, joined by Justices Wilcox and Prosser, in the instant case, but these three justices would allow the claimants to choose to be governed instead by the medical malpractice cap.)
¶ 76 This opinion concludes that the first interpretation is consistent with the text of the statutes and the statutory and legislative histories of the statutes and the policy the legislature enunciated in enacting § 893.55(4)(f), namely to place medical malpractice wrongful death claims "on the same footing" as wrongful death claims in other tort actions.[58]
¶ 77 This decision is explained by examining first the statutes and their statutory and legislative histories, beginning with chapter 655.

A
¶ 78 Chapter 655 governs the liability of health care providers for injury caused to patients.[59] Wisconsin Stat. § 655.017 provides for limits on noneconomic damages for acts or omissions by a health care provider. Specifically, § 655.017 provides as follows:

*232 The amount of noneconomic damages recoverable by a claimant or plaintiff under this chapter for acts or omissions of a health care provider if the act or omission occurs on or after May 25, 1995, and for acts or omissions of an employee of a health care provider, acting within the scope of his or her employment and providing health care services, for acts or omissions occurring on or after May 25, 1995, is subject to the limits under s. 893.55(4)(d) and (f). (emphasis added).
¶ 79 Section 655.017 is relevant to the present discussion because it refers to both Wis. Stat. § 893.55(4)(d) and Wis. Stat. § 893.55(4)(f), governing noneconomic damages in medical malpractice actions. A critical word in § 655.017 is "and." By using the conjunctive word "and" instead of the disjunctive word "or," § 655.017 makes clear that the caps in paragraphs (d) and (f) are not alternative provisions.[60]
¶ 80 Paragraph (d) of Wis. Stat. § 893.55(4) sets out the limit on noneconomic damages in medical malpractice actions for each occurrence of medical malpractice. The cap as it existed when the instant case was tried was $350,000, adjusted to the consumer price index. Section 893.55(4)(d) (2003-04) provided as follows:
The limit on total noneconomic damages for each occurrence under par. (b) on or after May 25, 1995, shall be $350,000 and shall be adjusted by the director of state courts to reflect changes in the consumer price index for all urban consumers, U.S. city average, as determined by the U.S. department of labor, at least annually thereafter, with the adjusted limit to apply to awards subsequent to such adjustments.
In Ferdon the court declared this cap unconstitutional.[61]
¶ 81 Paragraph (f) of Wis. Stat. § 893.55(4) addresses the limits on noneconomic damages for wrongful death in medical malpractice cases and directs us to § 895.04(4) of the wrongful death statute setting forth such limits. Section 893.55(4)(f) states:

Notwithstanding the limits on noneconomic damages under this subsection, damages recoverable against health care providers and an employee of a health care provider, acting within the scope of his or her employment and providing health care services, for wrongful death are subject to the limit under s. 895.04(4). If damages in excess of the limit under s. 895.04(4) are found, the court shall make any reduction required under s. 895.045 and shall award the lesser of the reduced amount or the limit under s. 895.04(4) (emphasis added).
¶ 82 Section 893.55(4)(f) serves as a limitation on Wis. Stat. § 893.55(4)(d). The *233 first clause of § 893.55(4)(f) says: "Notwithstanding the limits on noneconomic damages under this subsection [4]. . . ." The only paragraph in subsection 893.55(4) containing limits on noneconomic damages is paragraph (d), the medical malpractice cap. So, § 893.55(4)(f) should be read as follows: "Notwithstanding the limits on noneconomic damages under" § 893.55(4)(d), "damages recoverable against health care providers . . . for wrongful death are subject to the limit under s. 895.04(4)" (emphasis added).
¶ 83 The meaning of Wis. Stat. § 893.55(4)(f) depends on understanding two terms in paragraph (f): "notwithstanding" and "wrongful death."
¶ 84 What does "[n]otwithstanding the limits on noneconomic damages under" Wis. Stat. § 893.55(4)(f) mean? Notably, paragraph (4)(f) is more specific than paragraph (4)(d). Paragraph (f) refers to a specific type of noneconomic damages resulting from a medical malpractice claim, that is, damages for postdeath loss of society and companionship caused by the medical malpractice victim's death. Under paragraph (f), the § 895.04(4) cap on noneconomic damages for postdeath loss of society and companionship in wrongful death claims governs, notwithstanding (that is, in spite of) any provision contained within § 893.55(4) governing other noneconomic damages.
¶ 85 On its face, the "notwithstanding" phrase points us away from Wis. Stat. § 893.55(4) (the cap on noneconomic damages in medical malpractice) and specifically directs us toward § 895.04(4) (the cap on postdeath loss of society and companionship in wrongful death actions) to determine the recovery limits available in a wrongful death action. To read the statute otherwise would render the language "notwithstanding" superfluous.[62]
¶ 86 "Wrongful death" is, as discussed previously at length, a phrase of art that refers to a specific type of action: the statutory action assigned to certain family members to maintain a cause of action for postdeath loss of society and companionship caused by the death of a tort victim. At the risk of being repetitive: Wrongful death does not include claims for predeath noneconomic damages.
¶ 87 Tracking the reference in Wis. Stat. § 893.55(4)(f) to § 895.04(4), this opinion turns to § 895.04(4). Section 895.04(4) limits noneconomic damages in wrongful death actions to $350,000 per occurrence in the case of a deceased adult. Section 895.04(4) provides the wrongful death cap as follows:
Judgment for damages for pecuniary injury from wrongful death may be awarded to any person entitled to bring a wrongful death action. Additional damages not to exceed $500,000 per occurrence in the case of a deceased minor, or $350,000 per occurrence in the case of a deceased adult, for loss of society and companionship may be awarded to the spouse, children or parents of the deceased, or to the siblings of *234 the deceased, if the siblings were minors at the time of the death (emphasis added).
¶ 88 Section § 895.04(4) provides a limit for wrongful death damages. For purposes of the present case, it limits nonpecuniary (that is, noneconomic) damages for postdeath loss of society and companionship. No mention is made of claims for the victim's pain and suffering, and no mention is made of claims for noneconomic damages for predeath loss of society and companionship. In other words, nothing is said in the wrongful death statute about limits on noneconomic damages for predeath claims.[63]
¶ 89 Nothing in any of the statutes indicates a legislative intent to conflate noneconomic damages for predeath claims (such as the victim's pain and suffering and a family member's predeath loss of society and companionship) and noneconomic damages for wrongful death claims for postdeath loss of society and companionship into a single cause of action or a single statutory cap. In past cases the court has been unwilling to conflate these damages in interpreting the wrongful death statute.[64]
¶ 90 The legislature could have easily conflated the claims by merely adding the phrase "damages for predeath pain and suffering and damages for predeath loss of society and companionship" to Wis. Stat. § 893.55(4)(f), which addresses only wrongful death damages.
¶ 91 The words "per occurrence" in Wis. Stat. § 895.04(4) lead us to the last statutory provision to be examined, § 893.55(4)(b), which states the scope of the damage caps in medical malpractice claims for each occurrence. Section 893.55(4)(b) (2003-04) provides:
The total noneconomic damages recoverable for bodily injury or death, including any action or proceeding based on contribution or indemnification, may not exceed the limit under par. (d) for each occurrence on or after May 25, 1995, from all health care providers and all employees of health care providers acting within the scope of their employment and providing health care services who are found negligent and from the injured patients and families compensation fund (emphasis added).
¶ 92 It has been argued that the language in Wis. Stat. §§ 893.55(4)(b) and 895.04(4) referring to "each occurrence" and "per occurrence," respectively, establishes that there must be a single global cap for all noneconomic damages in medical malpractice actions.
¶ 93 Two possible analyses may result from this view of the word "occurrence" used in these two statutes. One analysis is that the wrongful death cap limits all noneconomic damages when death results from the medical malpractice, a view adopted by this court in Maurin. An alternative analysis is that the medical malpractice cap, § 893.55(4)(d), limits all noneconomic damages when death results from medical malpractice (and the wrongful death cap may limit the damages for postdeath loss of society and companionship within the medical malpractice cap). *235 Reliance on the word "occurrence" in each of these statutes as referring to an act of medical malpractice and requiring a single global cap on all noneconomic damages in medical malpractice cases is misplaced under both analyses.
¶ 94 The Maurin majority correctly observed that it could "conceive of no purpose for creating § 893.55(4)(f) if the legislature intended to retain the single cap in Wis. Stat. § 893.55(4)(d) [the medical malpractice cap] to cover total noneconomic damages in a wrongful death case involving medical malpractice."[65] This observation is sound. Subsection (f) was enacted, as the statutory and legislative histories show, to overturn the case law interpreting the medical malpractice cap as imposing a single global cap for all noneconomic damages in medical malpractice cases regardless of the death of the victim.[66]
¶ 95 To understand the words "for each occurrence" in Wis. Stat. § 893.55(4)(b), one must read them with the words "total noneconomic damages" and "bodily injury or death."
¶ 96 The words "total noneconomic damages" and "bodily injury or death" and "for each occurrence" in Wis. Stat. § 893.55(4)(b) suggest that § 893.55(4)(b) might be the only cap that applies to all noneconomic damages when a victim dies as a result of medical malpractice. But the words "or death" do not have the same meaning in the law as "wrongful death." Properly read, section 893.55(4)(b) applies to noneconomic damages for predeath claims, regardless of whether the medical malpractice victim incurs bodily injury or death. Thus total noneconomic damages for predeath claims for the victim's pain and suffering and a family member's predeath claim for loss of society and companionship are covered under the medical malpractice cap.
¶ 97 In contrast, total noneconomic damages for postdeath claims for loss of society and companionship are subject to the wrongful death cap in Wis. Stat. § 895.04(4) (and § 893.55(4)(f)).
¶ 98 The words "per occurrence" in Wis. Stat. § 895.04(4) do not implicate this opinion's interpretation that predeath claims are limited in a medical malpractice action by the medical malpractice cap. The words "per occurrence" in the wrongful death statute, Wis. Stat. § 895.04(4), were not inserted to provide the wrongful death cap as a single global cap on noneconomic damages in medical malpractice actions for losses other than postdeath claims for loss of society and companionship. As the Maurin majority opinion carefully explained, the words "per occurrence" were inserted in the wrongful death statute to ensure that all claimants for wrongful death (that is, those asserting claims for postdeath loss of society and companionship) *236 share a single wrongful death cap.[67]
¶ 99 The statutory and legislative histories of the medical malpractice and wrongful death cap statutes endorse this view that the words "total noneconomic damages," "bodily injury or death," "per occurrence" and "each occurrence" do not impose a single global cap of either the medical malpractice cap or the wrongful death cap.
¶ 100 Prior to 1986, no cap existed on noneconomic damages in medical malpractice cases. In 1986, the legislature created a cap of $1 million on noneconomic damages, amending § 655.017 to state that "the amount of noneconomic damages recoverable by a claimant under this chapter . . . is subject to the limit under § 893.55(4)" and creating § 893.55(4).[68] Neither ch. 655 nor § 893.55(4) contained any reference to wrongful death. The caps sunset on January 1, 1991.
¶ 101 The court interpreted this cap in Rineck v. Johnson, 155 Wis.2d 659, 456 N.W.2d 336 (1990), holding that when wrongful death resulted from medical malpractice, noneconomic damages for wrongful death, along with other noneconomic damages, were governed by the medical malpractice cap in § 893.55(4), not the wrongful death cap in § 895.04.[69] In other words, as the statutes were written at the time, the wrongful death cap in § 895.04(4) did not apply in medical malpractice cases. In support of this proposition, the Rineck court observed:
Significantly, ch. 655, Stats., does not state that damages recoverable in medical malpractice cases are also subject to the . . . limitation under the general wrongful death provisions of § 895.04(4). Had the legislature desired to appropriate the more restrictive damage limits of § 895.04(4) it would have provided so explicitly as it did in other instances. . . . We do not believe that the legislature would have taken pains to specifically refer to particular statutes . . . if it intended to incorporate without mention other miscellaneous general provisions, such as § 895.04(4).[70]
¶ 102 The holding in Rineck is clear. Without a provision in ch. 655 or 893 referring to the wrongful death cap, the wrongful death cap was inapplicable in medical malpractice cases.
*237 ¶ 103 Six months after the court decided Rineck, the sunset provision in Wis. Stat. §§ 655.017 and 893.55(4) took effect, and the medical malpractice cap ended. In Jelinek v. St. Paul Fire and Casualty Insurance Co., 182 Wis.2d 1, 512 N.W.2d 764 (1994), the court held that after the medical malpractice cap was sunset, noneconomic damages in medical malpractice actions, including noneconomic damages in medical malpractice actions in which death resulted, were not capped.[71]
¶ 104 This "uncapped" situation for noneconomic damages in medical malpractice actions continued until 1995, when the legislature amended the statutes to reinstate a medical malpractice cap in Wis. Stat. § 893.55(4)(b) and (d) and to create § 893.55(4)(f) governing wrongful death claims.[72]
¶ 105 The creation of Wis. Stat. § 893.55(4)(f) was a critical event in the development of caps for noneconomic damages in medical malpractice actions. The legislature in effect overturned the court's decisions in Rineck and Jelinek applying the medical malpractice cap to wrongful death claims and instituted a damage cap for a wrongful death claim arising from medical malpractice. Under the new § 893.55(4)(f), the same cap that applied to noneconomic damages for wrongful death claims in tort actions applied to noneconomic damages for wrongful death claims in medical malpractice actions.
¶ 106 The question that arose in Maurin and arises in the present case is how the wrongful death cap in medical malpractice actions interacts with the medical malpractice cap in medical malpractice actions. This opinion has analyzed the text and the statutory and legislative histories of the statutes and concluded that the statutes create two caps.
¶ 107 The purpose enunciated by the legislature in enacting Wis. Stat. § 893.55(4)(f) supports this interpretation of the statutes.

B
¶ 108 As both the majority and concurring opinions in Maurin observed, the legislative purpose in enacting § 893.55(4)(f) was to place medical malpractice wrongful death claims "on the same footing" as wrongful death claims in other tort actions.[73]
¶ 109 In non-medical malpractice tort cases, when the tort victim dies, there are two types of claims for noneconomic damages: one for predeath damages and the other for postdeath damages (that is, for wrongful death).
¶ 110 To put a wrongful death claim in a medical malpractice action on the same footing as a wrongful death claim in tort actions generally, Wis. Stat. § 893.55(4)(f) provides that the same cap that generally applies in tort wrongful death actions for postdeath loss of society and companionship applies in medical malpractice tort actions as well.
¶ 111 If, as the majority held in Maurin, the wrongful death cap serves in medical malpractice actions as a single cap for *238 noneconomic damages for postdeath loss of society and companionship, as well as for the medical malpractice victim's predeath pain and suffering, and for a family member's predeath claims for loss of society and companionship, medical malpractice wrongful death claims are not on the same footing as wrongful death claims in other tort cases. On the contrary, the Maurin majority's interpretation imposing a single global wrongful death cap on all noneconomic damages forces a wrongful death claimant in a medical malpractice action to share the capped amount with claimants for predeath noneconomic damages. Recoveries for noneconomic damages for wrongful death claimants in medical malpractice cases are, under Maurin, more severely limited than damages wrongful death claimants recover in other tort actions.
¶ 112 Similarly, if a claim for noneconomic damages for wrongful death is subject to the single global medical malpractice cap (as well as the wrongful death cap), a wrongful death claim in a medical malpractice case is not on the same footing as a wrongful death claim in other tort actions.[74]
¶ 113 Thus, if the legislature's enunciated public policy is to be the touchstone of the analysis, the outcome must be that the medical malpractice and wrongful death statutes provide two separate caps.
¶ 114 This opinion thus reaches the following conclusions regarding the statutory caps:
¶ 115 (1) If the medical malpractice does not result in the death of the victim, Wis. Stat. § 893.55(4)(d), the medical malpractice cap, limits the amount all claimants may recover for noneconomic damages resulting from the malpractice. Because § 893.55(4)(d) was declared unconstitutional in Ferdon, no cap applies to claims governed by this section, except as affected by statutory revisions adopted after Ferdon.
¶ 116 (2) If the victim dies as a result of medical malpractice, recovery for claims for noneconomic damages for postdeath loss of society and companionship (i.e., wrongful death) is governed by the wrongful death cap under Wis. Stat. § 895.04(4). The medical malpractice cap limits recovery for noneconomic damages for predeath claims. In other words, the wrongful death statute and the medical malpractice statutes create different caps for the different injuries to the various individuals for their claims for noneconomic damages for pre- and postdeath loss of society and companionship.
*239 ¶ 117 (3) When awards are made for noneconomic damages for both predeath claims for noneconomic damages and wrongful death claims, the awards should not, as the circuit court suggested, be regarded as "stacked."[75] In insurance law, "stacking" refers to "the process of obtaining benefits from a second policy on the same claim when recovery from the first policy alone would be inadequate."[76] In stacking insurance policies, one policy is placed on top of the other, providing additional coverage for the same claim.
¶ 118 If the insurance concept of stacking were applied in the context of medical malpractice damage awards, "stacking" would refer to putting one damage cap on top of another to allow greater recovery for the same claim. But a wrongful death claim and a claim for predeath noneconomic damages are not the same claim; recovery for each claim is not recovery for the same claim. Thus, awarding noneconomic damages for both a wrongful death claim and a predeath claim does not constitute stacking awards or damages.
¶ 119 (4) The unremarkable conclusion of this opinion is that the legislature allowed for the recovery of greater but still limited damages when medical malpractice results in a victim's death than when medical malpractice does not result in the victim's death.[77]

VI
¶ 120 Thus far, this opinion has concluded that Maurin was incorrectly decided and must be overruled. In its place, this opinion has adopted an interpretation consistent with the text of the medical malpractice and wrongful death statutes and the statutory and legislative histories of the statutes and the enunciated legislative policy of placing medical malpractice wrongful death claims "on the same footing" as wrongful death claims in other tort actions.[78] In rejecting Maurin and adopting a two-cap analysis of the medical malpractice and wrongful death caps, this opinion rejects two alternative readings of the malpractice caps when medical malpractice results in death: a single global medical malpractice cap for all noneconomic damages and a single global wrongful death cap for all noneconomic damages.
¶ 121 This opinion now considers another analysis of the cap statutes, suggested at oral argument. Under this analysis, Maurin is correct. Claimants may, however, avoid the result dictated by Maurin by pursuing only the claims for predeath noneconomic damages under the medical malpractice cap and abandoning noneconomic *240 damages for a wrongful death claim for postdeath loss of society and companionship. If the claimants choose to proceed with a wrongful death claim, their noneconomic damages are limited by the single global noneconomic damages cap adopted in Maurin. In other words, claimants may avoid the result dictated by Maurin by proceeding as though the medical malpractice victim had not died. According to Justice Roggensack's concurrence (joined by Justices Wilcox and Prosser), it is not too late for Robert Bartholomew to reject noneconomic damages awarded for wrongful death and, instead, accept the noneconomic damages for his and the estate's predeath claims that under Ferdon are not capped, or vice versa.
¶ 122 This analysis fails both in theory and practice. It fails in theory because it relies on this court's erroneous decision in Maurin. Furthermore, nothing in the statutes indicates that the legislature intended to force claimants to give up some of their claims in order to enable other claimants to recover more on their claims. Had the legislature intended to force the victim's family and estate to choose between noneconomic pre- and postdeath claims, it would have said so explicitly.
¶ 123 Moreover, forcing claimants to choose one of these paths fails to effectuate the legislative policy underlying the wrongful death cap in medical malpractice actions, namely to place wrongful death claims in medical malpractice cases on the same footing as wrongful death claims generally in tort cases. In medical malpractice cases, claimants would be forced to choose between noneconomic damages for postdeath loss of society and companionship (wrongful death) and recovery for predeath noneconomic damages. But in other tort cases the statutes force no such choice. Thus, this "choose your claim" analysis does not effectuate the legislative policy underlying the wrongful death cap in medical malpractice actions.
¶ 124 This suggested analysis fails in practice because claimants may have conflicting interests and may not agree on which path to follow. The present case may be an easy case in which to apply the suggested analysis. If Robert Bartholomew is the sole beneficiary of his wife's estate, he is the sole recipient of all the noneconomic damage awards. He may choose the path leading to the cap that is most advantageous to him.
¶ 125 But not every case is an easy case. When a wrongful death claimant is not the same person as the beneficiary of the estate or a claimant for noneconomic damages for predeath loss of society and companionship, the claimants may disagree about which path to follow. Nothing in the statutes and no case law has been cited to resolve a stalemate among the claimants.[79]
¶ 126 Because Maurin was wrongly decided and because there are practical impediments to the "choose your own claim" analysis, this opinion and Justice Butler do not adopt this analysis.

* * * *
¶ 127 In sum, the author of this opinion, Justice Bradley, and Justice Crooks agree *241 with the position advocated by Robert Bartholomew, which is essentially the position taken by the concurring opinion in Maurin. We three and Justice Butler conclude that Maurin's interpretation of Wisconsin's medical malpractice and wrongful death statutes to impose a single global wrongful death cap on all noneconomic damages is flawed because it failed to take into account the well-established distinction in Wisconsin tort law between actions for predeath damages and actions for postdeath damages (wrongful death actions). We three further conclude that the legislature adopted two caps: a medical malpractice cap for noneconomic damages for predeath claims and a wrongful death cap for noneconomic damages for postdeath loss of society and companionship. Claimants can thus recover for the different damages up to the separate limits of the applicable respective cap.
¶ 128 The conclusions in this opinion are compelled by basic principles of tort law and by the text and the statutory and legislative histories of the medical malpractice and wrongful death statutes capping noneconomic damages, and the policy enunciated by the legislature in adopting a wrongful death cap in medical malpractice actions.
¶ 129 We three, joined by Justice Butler (whose rationale is different), therefore hold that the jury award of noneconomic damages for predeath claims, namely the claim for the decedent's predeath pain and suffering, and the jury award for predeath loss of society and companionship are governed by the cap set forth in the medical malpractice statutes. See Wis. Stat. § 893.55(4)(d). In the instant case, however, no cap applies to these noneconomic damages in medical malpractice actions because § 893.55(4)(d) was held unconstitutional in Ferdon. The jury's $350,000 award for Robert Bartholomew's postdeath loss of society and companionship stands; it is within the wrongful death cap.
¶ 130 Accordingly we three, joined by Justice Butler, overturn the contrary holding in Maurin and reverse the decision of the court of appeals. We remand the matter to the circuit court to reinstate each of the jury's awards for noneconomic damages in accordance with this opinion.
The decision of the court of appeals is reversed and the cause remanded to the circuit court.
¶ 131 N. PATRICK CROOKS, J. (concurring).
I join the lead opinion, and strongly support its conclusion that "the legislature adopted two caps that apply in the event of death resulting from medical malpractice: a medical malpractice cap for noneconomic damages for predeath claims and a wrongful death cap for noneconomic damages for postdeath claims." Lead op., ¶ 16. I write separately to address Justice Butler's concurrence and his erroneous interpretation and application of the phrase "for each occurrence" in Wis. Stat. § 893.55(4)(b)(2003-04).[1] He claims that the phrase results in an "occurrence-based total global cap on the recovery of all noneconomic damages that arise from medical malpractice." Justice Butler's concurrence, ¶ 154 (footnote omitted). As we discussed in our concurrence in Maurin v. Hall, 2004 WI 100, 274 Wis.2d 28, 682 N.W.2d 866, (Abrahamson, C.J., and Crooks, J., concurring, joined in part by Bradley, J.) an interpretation of the phrase "for each occurrence" that imposes a global *242 cap on recovery in both survivorship and wrongful death claims in a suit involving medical malpractice is unconstitutional, leads to an absurd result, and ignores the scope, context, purpose, structure, and even the legislative history of that statute, when looked at with related statutes.
¶ 132 Justice Butler's concurrence advances an interpretation of Wis. Stat. §§ 893.55(4)(b) and (4)(d) that clearly renders the statutes unconstitutional.[2] In concluding that the legislature created a total global cap on the recovery of all noneconomic damages arising out of an occurrence of medical malpractice,[3] Justice Butler's erroneous interpretation of the statute leads to a global cap that is violative of both Article I, Section 5 and Article I, Section 9 of the Wisconsin Constitution, when linked and read together, as well as principles of equal protection.[4] As we stated in our concurrence in Maurin:
Such a low cap on noneconomic damages effectively denies plaintiffs the constitutional right to trial by jury under Article I, Section 5 and, in turn, to a remedy as guaranteed by Article I, Section 9 of the Wisconsin Constitution. Moreover, the majority's conclusion is violative of equal protection principles embodied in the Wisconsin and United States Constitutions.
Maurin, 274 Wis.2d 28, ¶ 197, 682 N.W.2d 866 (Abrahamson, C.J., and Crooks, J., concurring, joined in part by Bradley, J.)(footnotes omitted).
¶ 133 Courts in several other states have reached similar conclusions that, under certain circumstances, statutory damages caps unconstitutionally limit a claimant's access to the courts and right to a remedy.[5] It has been noted before that medical malpractice cases are very expensive to litigate.[6]See id., ¶ 209, 682 N.W.2d 866. The imposition of a global cap on the recovery *243 of all noneconomic damages arising out of an occurrence of medical malpractice, as championed in Justice Butler's concurrence, frustrates the ability of medical malpractice claimants to obtain legal counsel and, most significantly, to have access to ¶ a jury trial as guaranteed by Article I, Section 5 of the Wisconsin Constitution, especially when read in conjunction with Article I, Section 9 of that constitution.
¶ 134 Wisconsin courts have long recognized the importance of a litigant's right to a remedy. Maurin, 274 Wis.2d 28, ¶ 203, 682 N.W.2d 866 (Abrahamson, C.J., and Crooks, J., concurring, joined in part by Bradley, J.) (citing Knickerbocker v. Beaudette Garage Co., 190 Wis. 474, 480-81, 209 N.W. 763 (1926)). Article I, Section 9 of the Wisconsin Constitution does not confer any rights per se, but it does ensure a remedy when an injury results from violation of a legal right. Id., ¶ 207, 682 N.W.2d 866. Justice Butler's concurrence states that all claims arising out of an occurrence of medical malpracticeregardless of whether the claim is for injury, for wrongful death, or for bothare subject to the limit established in Wis. Stat. § 893.55(4)(d). Justice Butler's concurrence, ¶ 154. It is important to understand that the imposition of a single global cap on noneconomic damages effectively deprives a wrongful death claimant in a medical malpractice case of a remedy for his or her claim, and forces him or her to share the capped amount recovered with claimants for predeath noneconomic damages. Lead op., ¶ 111.
¶ 135 Additionally, the erroneous interpretation of Wis. Stat. §§ 893.55(4)(b) and (4)(d), as set forth in Justice Butler's concurrence, violates the equal protection clause of the Wisconsin Constitution, because it unduly burdens medical malpractice plaintiffs without a rational basis to justify such an interpretation. See Maurin, 274 Wis.2d 28, ¶ 214, 682 N.W.2d 866 (Abrahamson, C.J., and Crooks, J., concurring, joined in part by Bradley, J.). In order to bring an equal protection claim, a party must prove that a statute treats similarly situated members of a class differently. Id., ¶ 212, 682 N.W.2d 866. In medical malpractice cases, no fundamental right is implicated; therefore, a rational basis standard applies. Id. A statute will be upheld under equal protection principles if we find that a rational basis supports the legislative classification. Id.
¶ 136 The rationale adopted in Justice Butler's concurrence fails to advance the purpose of the legislature, and assigns to medical malpractice plaintiffs the unfair burden of maintaining the financial wellbeing of the medical industry. Id., ¶ 213, 682 N.W.2d 866. As explained in the lead opinion in this case, the application of a single global medical malpractice cap places wrongful death claimants in medical malpractice actions on different footing than wrongful death claimants in other tort actions. Lead op., ¶ 112. This differential treatment of similarly situated claimants offends principles of equal protection. See Maurin, 274 Wis.2d 28, ¶¶ 212-215, 682 N.W.2d 866 (Abrahamson, C.J., and Crooks, J., concurring, joined in part by Bradley, J.).
¶ 137 Additionally, the application of a single global medical malpractice cap to wrongful death claims for postdeath noneconomic loss of society and companionship and to survivorship claims for noneconomic loss leads to absurd results. See id., ¶ 194, 682 N.W.2d 866; see also lead op., ¶ 112 n. 74. As the lead opinion explained:
the rationality of the law of medical malpractice is compromised when a medical malpractice victim sustains serious injury but survives and is subject to no cap on noneconomic damages, while a *244 victim who is fatally injured and suffers for years before death resulting from medical malpractice is limited in noneconomic damages for predeath claims to the $350,000 wrongful death cap.
Lead op., ¶ 48.
¶ 138 As noted previously, it is important to look at scope, context, purpose, structure, and even the legislative history of the statutes involved. It is relevant to consider the relationship among the principal statutes at issue. Wisconsin Stat. § 893.55(4)(b), the medical malpractice statute, provides, in pertinent part: "[t]he total noneconomic damages recoverable for bodily injury or death . . . may not exceed the limit under par. (d) for each occurrence on or after May 25, 1995, from all health care providers . . . who are found negligent. . . ." (Emphasis added.)
¶ 139 Wisconsin Stat. § 893.55(4)(f), relating to wrongful death, provides, in relevant part: "[n]otwithstanding the limits on noneconomic damages under this subsection, damages recoverable against health care providers . . . for wrongful death are subject to the limit under § 895.04(4)." Wisconsin Stat. § 895.04(4), directed at wrongful death claims, provides, in relevant part: "[j]udgement for damages for pecuniary injury from wrongful death may be awarded to any person entitled to bring a wrongful death action. Additional damages not to exceed . . . $350,000 per occurrence in the case of a deceased adult, for loss of society and companionship. . . ."
¶ 140 In the Maurin concurrence, we explained that Wis. Stat. §§ 893.55(4)(d) and (4)(f) provide "separate and distinct" limits on noneconomic damages when medical malpractice results in wrongful death. Maurin, 274 Wis.2d 28, ¶ 177, 682 N.W.2d 866 (Abrahamson, C.J., and Crooks, J., concurring, joined in part by Bradley, J.). As we noted in that concurrence, Wis. Stat. § 655.017 provides "`[t]he amount of noneconomic damages recoverable by a claimant or plaintiff under this chapter for acts or omissions of a health care provider . . . is subject to the limits under s.893.55(4)(d) and (f). . . .'" Maurin, 274 Wis.2d 28, ¶ 180, 682 N.W.2d 866 (quoting Wis. Stat. § 655.017) (emphasis in Maurin). Rather than limiting recovery to "the lesser of either the § 893.55(4)(d) limit for medical malpractice or the § 893.55(4)(f) limit for wrongful death . . . . § 655.017 directs us to both §§ 893.55(4)(d) and (f) to assess the limits on damages imposed in cases of medical malpractice causing wrongful death." Id., ¶ 181, 682 N.W.2d 866; see also lead op., ¶ 79. The use of the conjunctive word "and" is extremely important in properly interpreting the relationship of these sections.
¶ 141 Having identified a phrase ("for each occurrence") in Wis. Stat. § 893.55(4)(b) that he claims was "ignore[d]" by the lead opinion, Justice Butler's concurrence applies what is claimed to be a plain meaning analysis to the phrase, and reaches the conclusion that such phrase unambiguously creates an "occurrence-based total global cap on the recovery of all noneconomic damages that arise from medical malpractice." Justice Butler's concurrence, ¶ 154 (footnote omitted). His concurrence lacks a thoughtful, careful analysis because the phrase "for each occurrence" is viewed in isolation. The concurrence fails to take into account the statutory scope, context, purpose and structure, and ignores the legislative histories of the medical malpractice and wrongful death cap statutes. See lead op., ¶¶ 99-107. A one paragraph analysis of the phrase "for each occurrence" is simply not sufficient under such circumstances.
¶ 142 Far from ignoring the statutory language, the lead opinion engages in a substantive discussion of the "occurrence" *245 language in "Wis. Stat. §§ 893.55(4)(b) and 895.04(4) referring to `each occurrence' and `per occurrence,' respectively. . . ." Lead op., ¶ 92. The lead opinion explains that to understand the meaning of the words "for each occurrence" in § 893.55(4)(b), one must consider it in the context of statutory phrases "total noneconomic damages" and "bodily injury or death." Id., ¶ 95.
¶ 143 Because the words "or death" have a separate and distinct meaning in the law from "wrongful death," Wis. Stat. § 893.55(4)(b) must be read as applying "to noneconomic damages for predeath claims, regardless of whether the medical malpractice victim incurs bodily injury or death." Lead op., ¶ 96. I wholeheartedly agree with the lead opinion that the words "per occurrence" in Wis. Stat. § 895.04(4), the wrongful death statute, do not impose a single global cap on noneconomic damages in medical malpractice actions. The statutory "per occurrence" language was inserted "to ensure that all claimants for wrongful death (that is, claims for postdeath loss of society and companionship) share a single wrongful death cap." Id., ¶ 98; see also id., ¶ 98 n. 67.
¶ 144 Furthermore, I am satisfied that the lead opinion is correct when it highlights the Maurin majority's significant observation that it could "`conceive of no purpose for creating § 893.55(4)(f) if the legislature intended to retain the single cap in Wis. Stat. § 893.55(4)(d) [the medical malpractice cap] to cover total noneconomic damages in a wrongful death case involving medical malpractice.'" Lead op., ¶ 94 (quoting Maurin, 274 Wis.2d 28, ¶ 35, 682 N.W.2d 866 (emphasis in Maurin)). As the lead opinion here explains, subsection (4)(f) "was enacted, as the statutory and legislative histories show, to overturn the case law interpreting the medical malpractice cap as imposing a single global cap for all noneconomic damages in medical malpractice cases regardless of the death of the victim." Lead op., ¶ 94 (citing Rineck v. Johnson, 155 Wis.2d 659, 665-69, 456 N.W.2d 336 (1990)).
¶ 145 The legislative history buttresses my conclusions here. As we concluded in our concurrence in Maurin, referring to a Memorandum, in regard to 1997 Act 89, from a senior staff attorney at the Legislative Reference Bureau (LRB)[7] the LRB "analysis of the bill . . . demonstrates that the bill creates two separate statutory limits, one on noneconomic damages in medical malpractice cases and one on damages for wrongful death (loss of society and companionship) arising from medical malpractice." Maurin, 274 Wis.2d 28, ¶ 193, 682 N.W.2d 866 (Abrahamson, C.J., and Crooks, J., concurring, joined in part by Bradley, J.) (footnotes omitted). Because it would render that and related statutes unconstitutional, lead to absurd results, and is at odds with the statutory scope, context, purpose, structure, and legislative history, Justice Butler's erroneous interpretation of the phrase "for each occurrence" in Wis. Stat. § 893.55(4)(b) cannot be accepted, even though he reaches the correct result as far as the mandate in this case. Where a death results from medical malpractice, the legislature enacted two caps on noneconomic damages, one for predeath claims and a wrongful death cap for postdeath claims. I strongly support the reasoning and conclusions of the lead opinion and write separately in order to respond to Justice Butler's concurrence.
¶ 146 For the forgoing reasons, I join the lead opinion, and respectfully concur.
*246 ¶ 147 LOUIS B. BUTLER, JR., J. (concurring).
The lead opinion holds that the jury award of noneconomic damages for predeath claims to Robert Bartholomew (Bartholomew) is governed by the cap set forth in Wis. Stat. § 893.55(4)(d) (2003-04).[1] Lead op., ¶ 129. As the lead opinion recognizes, however, no cap applies to these noneconomic damages in this case because § 893.55(4)(d) was held unconstitutional in Ferdon v. Wisconsin Patients Comp. Fund, 2005 WI 125, 284 Wis.2d 573, 701 N.W.2d 440. Lead op., ¶ 129. The lead opinion also holds that the jury's $350,000 award for Bartholomew's post-death loss of society and companionship stands; it is within the wrongful death cap. Id.
¶ 148 In reaching this decision, the lead opinion adopts "essentially the position taken by the concurring opinion in Maurin [v. Hall, 2004 WI 100, 274 Wis.2d 28, 682 N.W.2d 866.]" Lead op., ¶ 127. The lead opinion concludes that Maurin's interpretation of Wisconsin's medical malpractice and wrongful death statutes to impose a single global wrongful death cap on all noneconomic damages is flawed because it failed to take into account the well-established distinction between actions for predeath and post-death actions for damages. Id. The lead opinion further concludes that the legislature adopted two separate caps, one for pre-death claims and one for postdeath claims, and that both claims can be stacked up to the separate limits of the applicable respective cap. Id. The lead opinion would accordingly overturn the contrary holding in Maurin and reverse the decision of the court of appeals in this case.
¶ 149 Justice Roggensack's concurring/dissenting opinion, on the other hand, concludes that Maurin correctly decided that the legislature created an occurrencebased cap on the recovery of all noneconomic damages that arise from medical malpractice, to which all plaintiffs and all types of claims are subject. Justice Roggensack's concurrence/dissent, ¶ 174. Justice Roggensack also concludes that Maurin does not prevent selecting whichever cap on noneconomic damages the plaintiffs prefer. Id. She would not overrule Maurin, but does concur in the mandate to reverse the court of appeals. Id.
¶ 150 The lines drawn in each of these opinions are essentially the same lines drawn in Maurin. The lead opinion (and the Maurin concurrence) seeks to preserve all pre-death and post-death common law claims as separate and distinct, in spite of legislation to the contrary. Justice Roggensack's opinion (and the majority in Maurin) rewrites that legislation in the face of express language to the contrary. Although I agree with today's mandate, I write separately because I respectfully disagree with both opinions' analyses regarding the interaction between the statutory limits on recovery for injuries caused by medical malpractice and the statutory limits on recovery for medical malpractice that results in wrongful death. I essentially conclude that the position advocated by Dr. Hall and the Patients Compensation Fund in Maurin properly interprets Wisconsin's statutory scheme, as it then existed.[2] In other words, Wis. Stat. *247 § 893.55(4)(d) then provided a global cap for pre-death and post-death noneconomic damages. That statute was subsequently held to be unconstitutional in Ferdon, so that the global cap no longer exists in this case. The wrongful death cap remains in the wrongful death action. Accordingly, I respectfully concur.
¶ 151 The lead opinion relies on Wis. Stat. § 655.017 (2003-04) in concluding that the amount recoverable for medical malpractice injuries is found in Wis. Stat. § 893.55(4)(d) and (f). Lead op., ¶¶ 78-79. The lead opinion concludes that there are two separate and independent caps: "a medical malpractice cap for noneconomic damages for pre-death claims and a wrongful death cap for noneconomic damages for post-death claims." Id., ¶ 16. Under the lead opinion's decision, neither subsection controls nor impacts the other.
¶ 152 The lead opinion is correct, up to a point. The distinction between claims for noneconomic damages for a victim's predeath pain and suffering (survival actions) and claims for noneconomic damages for post-death (wrongful death) injuries is well-established in Wisconsin law. Lead op., ¶ 54 (citing Koehler v. Waukesha Milk Co., 190 Wis. 52, 56, 208 N.W. 901 (1926)). See also Brown v. The Chicago & Nw. Ry. Co., 102 Wis. 137, 142, 77 N.W. 748 (1898), reh. den., 102 Wis. 137, 78 N.W. 771 (1899); Woodward v. The Chicago & Nw. Ry. Co., 23 Wis. 400, 405-06 (1868). Claimants for the two types of actions might not be the same person. Lead op., ¶ 59. The two claims do not provide for a double recovery, but instead provide "recovery for a double wrong." Id., ¶ 54. Under common law, "stacking" these different types of claims has already been recognized by this court. See id., ¶ 69 n. 53. In the absence of clear legislation to the contrary, I would join the lead opinion.[3]
¶ 153 However, the lead opinion's analysis ignores the impact of subsection (4)(b). Lead op., ¶¶ 91-93 (examining Wis. Stat. § 893.55(4)(b)). This case presents a question of statutory interpretation, which we review de novo. State v. Reed, 2005 WI 53, ¶ 13, 280 Wis.2d 68, 695 N.W.2d 315. "We begin with the statute's language because we assume that the legislature's intent is expressed in the words it used." Id. In addition, statutory language is interpreted in the context in which it is used, in relation to the language of surrounding or closely related statutes, and *248 interpreted to avoid absurd or unreasonable results. State ex rel. Kalal v. Circuit Court for Dane County, 2004 WI 58, ¶ 46, 271 Wis.2d 633, 681 N.W.2d 110. See also State v. Wachsmuth, 73 Wis.2d 318, 326-30, 243 N.W.2d 410 (1976) (concluding that when two statutes are "in pari materia, the court must harmonize them if possible").
¶ 154 Subsection (4)(b) clearly stated that the total amount recoverable for all claims arising out of an occurrence of medical malpracticeregardless of whether the claim is for an injury, for wrongful death, or for bothis subject to the limit established in § 893.55(4)(d). The statute stated:
The total noneconomic damages recoverable for bodily injury or death, including any action or proceeding based on contribution or indemnification, may not exceed the limit under par. (d) for each occurrence on or after May 25, 1995, from all health care providers and all employees of health care providers acting within the scope of their employment and providing health care services who are found negligent and from the injured patients and families compensation fund.
§ 893.55(4)(b).[4] Based on this language, I agree with Justice Roggensack and the Maurin majority that the legislature created an occurrence-based total global cap on the recovery of all noneconomic damages that arise from medical malpractice.[5] Justice Roggensack's concurrence/dissent, ¶ 174; Maurin, 274 Wis.2d 28, ¶ 44, 682 N.W.2d 866.
¶ 155 I do not agree with the Maurin court's conclusion that the words of the statute, "or death," "show that the legislature intended to provide a single recovery even if the medical malpractice resulted in wrongful death." Maurin, 274 Wis.2d 28, ¶ 23, 682 N.W.2d 866.[6] Nor do I agree with Justice Roggensack that the "stacking of caps for the recovery of noneconomic damages is precluded by statute." Justice Roggensack's concurrence/dissent, ¶ 182. To read the statute in this fashion would read out of the statute the phrase, "including any action or proceeding based on contribution or indemnification[.]" Wis. Stat. § 893.55(4)(b) (emphasis added). It would also fail to take into account subsection (4)(d), which refers to "[t]he limit on total noneconomic damages for each occurrence under par. (b)[.]" Finally, it would fail to take into account that portion of subsection (4)(b) with respect to "bodily injury or death." These subsections, when read together, indicate that multiple claims, whether for injury or death, arising out of the same occurrence of malpractice are governed by one total global cap. Nothing in the language of these statutes suggests that the legislature limited or eliminated the number of claims, parties, or types of actions that could be brought *249 for medical malpractice within the total global cap.[7] I interpret and apply the law as drafted by the legislature, as opposed to what it might mean based on our construction of what the legislature may have intended to do.[8]
¶ 156 Subsection (4)(f), which limits the recovery for medical malpractice that results in wrongful death,[9] operates within the total amount recoverable for all malpractice claims arising out of the same occurrence of medical malpractice under subsection (4)(d).[10] Together, subsections (4)(b), (4)(d), and (4)(f) create a "cap within a cap." Pursuant to subsection (4)(b), recovery for injuries caused by medical malpractice cannot exceed the limits established in subsection (4)(d), recovery for medical malpractice that results in wrongful death cannot exceed the limits established in subsection (4)(f), and together, the total recovery for medical malpractice injury and medical malpractice that results in wrongful death cannot exceed the limits established in subsection (4)(d). A plaintiff or different plaintiffs could bring both survivorship claims and wrongful death claims under the statute, as long as those claims did not exceed the total global cap under subsection (4)(d).[11]
¶ 157 In Ferdon, 284 Wis.2d 573, ¶ 10, 701 N.W.2d 440, subsection (4)(d) was ruled unconstitutional.[12] As a result, there now is no statutory limit on the total *250 amount that Helen's estate or her husband could recover. However, the wrongful death limit, pursuant to subsection (4)(f), remains in effect.
¶ 158 Because the jury award for Helen's wrongful death did not exceed the $350,000 statutory limit on medical malpractice resulting in wrongful death, the jury award$500,000 to Helen Bartholomew's estate for her pre-death pain and suffering, $350,000 to Robert Bartholomew for his pre-death loss of society and companionship, and $350,000 to Robert Bartholomew for his loss of society and companionship after Helen's deathwas within the statutory limits.
¶ 159 For the foregoing reasons, I respectfully concur.
¶ 160 DAVID T. PROSSER, J. (concurring in part, dissenting in part).
In Maurin v. Hall, 2004 WI 100, 274 Wis.2d 28, 682 N.W.2d 866, this court was asked to interpret and apply the medical malpractice and wrongful death statutes in the case of a child who died as the result of a physician's failure to diagnose her acute diabetic ketoacidosis.
¶ 161 The facts were critical to the disposition of the case. The child's mother brought her to a clinic on a Tuesday. Late Wednesday evening, the child was taken to a hospital. The failure to make a correct diagnosis occurred at this time. The next morning, Thursday, the child was returned to the hospital where a correct diagnosis was made. After the hospital attempted treatment, it rushed the child to Children's Hospital of Wisconsin in Milwaukee. On Friday the child died. The child lost consciousness during the ambulance ride to Children's Hospital.
¶ 162 In subsequent litigation, a Washington County jury awarded the child's estate $550,000 for the child's pre-death pain and suffering. It awarded $2,500,000 to the child's parents as wrongful death damages for their loss of society and companionship. At that time, there was a cap of $381,428 on medical malpractice noneconomic damages and a cap of $150,000 on wrongful death noneconomic damages.
¶ 163 The Washington County Circuit Court determined that the $150,000 wrongful death cap was unconstitutional. This ruling made the child's parents eligible for the $2,500,000 jury award. However, the court remitted the $550,000 award for the child's pre-death pain and suffering to $100,000.[1]
¶ 164 In this court, the plaintiffs sought to uphold the $2,500,000 award and to overturn the remittitur. As a fallback position, plaintiffs sought to add the two caps of $381,428 and $150,000 for an award of $531,428.
¶ 165 Two members of the courtChief Justice Abrahamson and Justice Crooks bought into the plaintiffs' argument that the wrongful death cap was unconstitutional. Three members of the courtChief Justice Abrahamson, Justice Bradley, and Justice Crooksdeclared that the circuit court erroneously exercised its discretion in remittitur. The same three members of the court concluded that the statutory scheme made the plaintiffs eligible for the limits on noneconomic damages for both medical negligence and wrongful death, i.e., $531,428.
¶ 166 A majority of the court concluded that the statutory scheme contemplated a single award for a single occurrence in a medical malpractice case. Derivative claims from that single occurrence were governed by the applicable cap, which, in *251 that case, was the wrongful death cap. The court's analysis in reaching this conclusion is set out at considerable length. Maurin, 274 Wis.2d at 28, ¶¶ 18-89, 682 N.W.2d 866.
¶ 167 The present case has very different facts because Helen Bartholomew lived for five years after the alleged malpractice. That she ultimately died does not alter the fact that she clearly qualified under the medical malpractice statute. Her husband Robert's derivative claims did not need to be brought under the wrongful death statute.
¶ 168 I join the concurrence/dissent of Justice Roggensack in its entirety because it fully explains Maurin and produces a fair result in this case.
¶ 169 In retrospect, a judicial writer is often able to conceive of a more precise, inclusive, or felicitous phrase than one he used in a published opinion. That is true with the Maurin opinion. Yet, after reflection, I would not change the substance or analysis of the Maurin opinion in any significant way because I think now, as I thought then, that it faithfully follows the language of the statute and the legislature's intent.
¶ 170 As Abraham Lincoln might have put it, if I were to try to answer all the attacks on my opinions, "this shop might as well be closed for any other business. I do the very best I know howthe very best I can; and I mean to keep on doing so until the end." If the fair-minded reader reviews the Maurin analysis and agrees with the opinion, then all the condemnation won't amount to anything. If the fair-minded reader thinks the analysis is not supported by the statutes, then ten angels swearing otherwise will make no difference.
¶ 171 For the foregoing reasons, I write separately.
¶ 172 PATIENCE DRAKE ROGGENSACK, J. (concurring in part and dissenting in part).
The lead opinion concludes that our recent decision in Maurin v. Hall, 2004 WI 100, 274 Wis.2d 28, 682 N.W.2d 866, should be overruled in regard to Maurin's holding that the legislature established a single cap on the recovery of all noneconomic damages resulting from an occurrence of medical malpractice. Lead opinion, ¶ 16. The lead opinion is driven by its conclusion that Maurin "fails to take into account the well-established distinction in Wisconsin tort law between actions for noneconomic damages for predeath claims and a `wrongful death' claim, that is, a claim for noneconomic damages for postdeath loss of society and companionship." Id.
¶ 173 The lead opinion's conclusion is unsupported by legal principles for at least three reasons: (1) At common law, there was no claim for wrongful death; the wrongful death claim was created entirely by the legislature. Accordingly, there is no "well-established" postdeath common law claim which Maurin fails to take into account; (2) There is no compelling reason to disregard stare decisis and overturn Maurin; and (3) The lead opinion is based on its own policy choice about what is best for Wisconsin, rather than giving deference to the acts of the legislature that created an occurrence-based classification for all noneconomic damages that result from medical malpractice.
¶ 174 I conclude that Maurin correctly decided that the legislature created an occurrence-based cap on the recovery of all noneconomic damages that arise from medical malpractice, to which all plaintiffs and all types of claims are subject. I also conclude that Maurin does not prevent the plaintiffs from selecting whichever cap on noneconomic damages they prefer. Accordingly, *252 I respectfully dissent from the lead opinion's decision to overrule Maurin. However, I concur in the mandate to reverse the court of appeals because I would remand to the circuit court for a hearing on which cap is to be appliedthe cap set out in Wis. Stat. § 893.55(4)(d) or the cap set out in Wis. Stat. § 895.04(4).

I. BACKGROUND
¶ 175 The lead opinion correctly sets out that Helen Bartholomew was the victim of medical malpractice when she had a heart attack that was not discovered soon enough to keep her from catastrophic injuries. Lead op., ¶¶ 25-26. After her release from the hospital, she remained in a nursing home until her death, five years after the occurrence of malpractice. Id. at ¶ 26.
¶ 176 Helen and her husband, Robert, began an action for malpractice before her death. Id. at ¶ 27. When she died, Robert, as the special administrator of Helen's estate, added a claim for wrongful death as well. Id. At the time those claims were tried, they had the potential to be affected by two different caps on the recovery of noneconomic damages. Wisconsin Stat. § 893.55(4)(d) (2003-04)[1] had the potential to apply to the recovery of predeath noneconomic damages arising from the medical malpractice, and Wis. Stat. § 895.04(4) to the recovery of wrongful death noneconomic damages.[2] However, in Maurin we concluded that the stacking of caps[3] for the recovery of noneconomic damages that arose from an occurrence of medical malpractice was not permitted under the statutory plan established by the legislature. Maurin, 274 Wis.2d 28, ¶ 22, 682 N.W.2d 866.

II. DISCUSSION

A. Standard of Review
¶ 177 In order to decide whether stacking of caps for noneconomic damages arising from medical malpractice practice is permitted when the injured party lives for five years after an occurrence of medical malpractice, we apply statutes to known facts. This presents a question of law for our independent review. State v. Franklin, 2004 WI 38, ¶ 5, 270 Wis.2d 271, 677 N.W.2d 276. Whether a prior decision controls the question presented for review, is also a question we review de novo. See Schultz v. Natwick, 2002 WI 125, ¶¶ 37-38, 257 Wis.2d 19, 653 N.W.2d 266.

B. The Central Issue
¶ 178 The central issue presented is whether plaintiffs may recover total noneconomic damages in an amount that is equal to the stacking of the cap for the recovery of noneconomic damages for wrongful death found in Wis. Stat. § 895.04(4) on top of the cap for the recovery of predeath noneconomic damages found in Wis. Stat. § 893.55(4)(d), when *253 both claims arise from an occurrence of medical malpractice.

1. Nature of the claims
¶ 179 The lead opinion chooses to overrule Maurin based in large part on what it asserts to be the "well-established distinction" between claims for predeath noneconomic damages and postdeath noneconomic damages. Lead op., ¶ 16. This distinction has no relevance to the question Maurin decided which is, simply stated: whether the legislature intended to limit the recovery of noneconomic damages for an occurrence of medical malpractice to one global cap. Maurin, 274 Wis.2d 28, ¶ 22, 682 N.W.2d 866.
¶ 180 In order to re-examine that question, it is important to keep in mind that a claim for wrongful death did not exist at common law; it is a claim for relief that was created entirely by statute. Weiss v. Regent Props., Ltd., 118 Wis.2d 225, 230, 346 N.W.2d 766 (1984) (citing Krantz v. Harris, 40 Wis.2d 709, 714, 162 N.W.2d 628 (1968)). The claim belongs to the beneficiaries of the deceased and was "designed to compensate for the loss of the relational interest existing between the beneficiaries and the decedent." Weiss, 118 Wis.2d at 230, 346 N.W.2d 766 (citing Wurtzinger v. Jacobs, 33 Wis.2d 703, 709-10, 148 N.W.2d 86 (1967)). When the legislature created the claim for wrongful death, it limited who may sue for it; who may own the proceeds of the claim; and what damages may be recovered. Weiss, 118 Wis.2d at 230-31, 346 N.W.2d 766.
¶ 181 A claim for the deceased's predeath pain and suffering passes to the deceased's estate at death, and can be brought by the personal representative as part of his wrongful death action. Schwab v. Nelson, 249 Wis. 563, 568, 25 N.W.2d 445 (1946). Under the wrongful death statute, the legislature has established a maximum amount that can be recovered for the death, no matter how many beneficiaries are entitled to share in the recovery. Wis. Stat. § 895.04(3) and (4). In a wrongful death action, recovery for a claimed relational injury is not automatic, but rather, the amount of damages must be proved by each survivor claiming an interest. Keithley v. Keithley, 95 Wis.2d 136, 138, 289 N.W.2d 368 (Ct.App.1980). Wrongful death damages are not a part of the decedent's estate, to be divided simply based on a biological relationship to the decedent. Id. When the death is not caused by medical malpractice, the only limit is that set out in § 895.04(4).
¶ 182 However, the claim for wrongful death is entirely a creature of the legislature, as are the limits on recovery of noneconomic damages due to medical malpractice. The legislature has shown these classifications are linked by responding to an earlier decision of this court wherein we concluded that the caps on the recovery of noneconomic damages arising from medical malpractice caps did not apply to wrongful death claims. Jelinek v. St. Paul Fire & Cas. Ins. Co., 182 Wis.2d 1, 14, 512 N.W.2d 764 (1994). The legislature amended Wis. Stat. § 893.55(4) to overrule Jelinek. Accordingly, as the wrongful death claim, the caps on wrongful death recovery and the caps on the recovery of noneconomic damages based on proven medical malpractice all are creatures of the legislature, it is reasonable to conclude, as we did in Maurin, that the legislature limited plaintiffs who have claims arising from an occurrence of medical malpractice to one global cap on the recovery of all noneconomic damages. That is, stacking of caps for the recovery of noneconomic damages is precluded by statute. Maurin, 274 Wis.2d 28, ¶ 22, 682 N.W.2d 866.

*254 2. Chapter 655
¶ 183 Furthermore, we have also concluded that in regard to recoverable damages arising from an occurrence of medical malpractice, ch. 655 modifies the common law and other statutory law for claims made and the noneconomic damages that may be recovered. Storm v. Legion Ins. Co., 2003 WI 120, ¶ 35, 265 Wis.2d 169, 665 N.W.2d 353. The modification that ch. 655 undertakes is in regard to "general civil law in instances where [ch. 655] speaks to a given subject." Id. If "general statutory provisions conflict with Chapter 655, the latter will trump the general statute." Id.
¶ 184 In Wis. Stat. § 893.55(4), the legislature spoke to the subject of recovery of noneconomic damages arising from medical malpractice.[4] Section 893.55(4) established an occurrence-based disposition for the "total" recovery of noneconomic damages that arise out of "each occurrence" of medical practice, regardless of whether "injury or death" results. Section 893.55(4)(b) states:

The total noneconomic damages recoverable for bodily injury or death . . . may not exceed the limit under par. (d) for each occurrence on or after May 25, 1995, from all health care providers and all employees of health care providers acting within the scope of their employment and providing health care services who are found negligent and from the injured patients and families compensation fund. (Emphasis added.)
The single limit on recovery of noneconomic damages of § 893.55(4)(b) unambiguously applies whether the claim is for predeath or wrongful death noneconomic damages. Maurin, 274 Wis.2d 28, ¶ 23, 682 N.W.2d 866. Simply put, the legislature limited the recovery of noneconomic damages for an occurrence of medical malpractice, no matter how many persons may have claims, direct or derivative, and no matter how many persons participated in the malpractice, directly or by failing to supervise or properly train a direct participant. Id., ¶ 29, 682 N.W.2d 866; see also Wis. Stat. § 655.007;[5] Wis. Stat. § 893.55(4)(f);[6] Wis. Stat. § 893.55(4).

3. Stare decisis
¶ 185 Before coming to this conclusion about the meaning of the relevant statutes in Maurin, we performed a thorough review of the statutory language, of the legislative history and of our previous decisions with regard to legislative changes and policies that limit damage recovery for noneconomic damages for medical malpractice claims. Maurin, 274 Wis.2d 28, ¶¶ 20-90, 682 N.W.2d 866. The lead opinion's decision to re-interpret the same statutes and overturn Maurin less than two years after Maurin was mandated is a significant departure from the doctrine of stare decisis.
¶ 186 The lead opinion recognizes that to overrule precedent requires a special justification. Lead op., ¶ 32. It then cites factors that it asserts can constitute special *255 justification to overturn prior precedent:
(1) Changes or developments in the law have undermined the rationale behind a decision; (2) there is a need to make a decision correspond to newly ascertained facts; (3) there is a showing that the precedent has become detrimental to coherence and consistency in the law; (4) the prior decision is "unsound in principle;" (5) the prior decision is "unworkable in practice."
Id., ¶ 33 (citing Johnson Controls, Inc. v. Employers Ins. of Wausau, 2003 WI 108, ¶¶ 98-99, 264 Wis.2d 60, 665 N.W.2d 257). It concludes that the listed factors are "sufficiently implicated" in the present case to justify overruling Maurin's conclusion that the cap on the recovery of noneconomic damages for a wrongful death claim cannot be stacked on top of the cap on the recovery of noneconomic damages in a personal injury claim. Lead op., ¶ 35.
¶ 187 The lead opinion initially focuses on the fourth of these five factors, that this court's prior decision in Maurin is "unsound in principle and was wrongly decided." Id., ¶ 36, 682 N.W.2d 866. In order for this assertion to constitute a sufficient reason to overturn Maurin, whose decision is driven by our statutory interpretation, the lead opinion would have to show that the statutes did not mean there was to be only one cap on the recovery of all noneconomic damages arising out of an occurrence of medical malpractice. However, the lead opinion does not review Maurin's careful and comprehensive statutory interpretation. Instead, it asserts we erred in Maurin because our decision was:
founded upon an ill-fitted analysis of what a wrongful death action is and failing to fully understand and explain the distinction between noneconomic damages for postdeath loss of society and companionship and noneconomic damages for predeath claims. A decision based on a faulty interpretation of over 150 years of case law is "unsound in principle."
Id., ¶ 36, 682 N.W.2d 866.
¶ 188 Maurin is based on what the statutes mean. It has nothing to do with any lack of understanding about the nature of predeath and wrongful death noneconomic damages or claims. The lead opinion's rationale for deciding to overturn our decision is breathtaking. First, it shows a lack of respect for the institutional integrity of our opinions, and second, it shows an equal lack of respect for the policy choices made by the legislature, as it substitutes its own policy choice for Wisconsin. The lead opinion's rationale is an insufficient justification for ignoring stare decisis, one of the pillars that support the institutional integrity of the court. As has been explained:
Adherence to stare decisis is crucial because "[r]espect for precedent `promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.'"
Johnson Controls, 264 Wis.2d 60, ¶ 138, 665 N.W.2d 257 (Wilcox, J., dissenting) (citation omitted).
¶ 189 One of the lead opinion's two alternate rationales for ignoring precedent is that Maurin is "difficult to apply." Lead op., ¶ 43. There are no facts to support this assertion. As of June 10, 2006, there has been only one other appellate case, besides the instant case, that address Maurin's limitation on noneconomic damages, Pierce v. Physicians Insurance Co. of Wisconsin, Inc., 2005 WI 14, 278 Wis.2d 82, 692 N.W.2d 558.
¶ 190 In Pierce, we were asked to address Maurin in the context of medical malpractice that resulted in a stillborn *256 child. Pierce, 278 Wis.2d 82, ¶ 28, 692 N.W.2d 558. We concluded that Maurin did not apply to the attempted recovery of noneconomic damages because no stacking of caps was involved. Id., ¶ 28, 682 N.W.2d 866. We distinguished the claim in Pierce from that presented in Maurin because in Maurin, only one person suffered a direct injury as the result of malpractice and the other claims were derivative of that one injury. Id. In Pierce, there were two persons who each sustained a direct injury from medical malpractice. Id. Therefore, each person had a right to her own cap on the recovery of noneconomic damages.
¶ 191 The lead opinion also hints that if stacking of caps is not permitted, a plaintiff in a personal injury action may receive constitutionally inadequate damages. Lead op., ¶ 44. This contention is an attempt to create a straw man that the lead opinion can then knock down. As I noted above at ¶ 180, a wrongful death claim is totally a creature of statute. Therefore, the legislature could entirely eliminate the claim if it chose, by changing the law so that $0.00 could be recovered for wrongful death.
¶ 192 In addition, my review of the factors we have held were sufficient to cause us to overrule a prior decision, in light of the circumstances of this case, lead me to the conclusion that none of the factors are met. First, no changes or developments in the law have occurred that would undermine the rationale of Maurin. Maurin concluded that the legislature meant to permit one global cap to be applied under the exact same statutes that apply to this case.[7] Second, it is undisputed that there is no need to make Maurin correspond to newly ascertained facts. Third, there has been no showing that the Maurin decision has become detrimental to coherence in the law. As explained above, we analyzed Maurin under new facts in Pierce and further explained the rule of law established in Maurin.
¶ 193 The lead opinion suggests that the factual situation of the present case is sufficiently distinct from that of Maurin because there was a significant length of time after an occurrence of medical malpractice before death occurred. Id., ¶ 38, 682 N.W.2d 866. However, the lead opinion also contends that the factual distinction in the two cases should not be a basis for distinguishing Maurin. Id., ¶¶ 39-40, 682 N.W.2d 866. The lead opinion concludes that nothing in the statutes or the case law distinguishes between medical malpractice victims who survive for different lengths of time and therefore, it declines to create a judicial distinction in that regard. Id., ¶ 41, 682 N.W.2d 866. All of this may be true. That Helen survived for five years after she was injured is a significant fact that may affect how Maurin will be applied, but that fact provides no basis for overruling Maurin; the lead opinion simply chooses to do so.[8]

4. Helen's injury
¶ 194 This review does not question that Helen suffered catastrophic injuries due to an occurrence of medical malpractice for which she and her husband, Robert, sought compensation for the personal injuries she sustained and for the derivative injuries Robert sustained. Helen lived *257 five years and when she died, Robert sought compensation for her wrongful death. He sued on his own behalf and on behalf of Helen's estate. Robert, individually, and Helen's estate were awarded noneconomic damages of $850,000 for their personal injury claims and Robert was awarded noneconomic damages of an additional $350,000 for his wrongful death claim.
¶ 195 However, Maurin did not require Robert to bring a wrongful death claim, and Maurin does not require that he accept the noneconomic damages awarded for the wrongful death claim, as limited by the cap of Wis. Stat. § 895.04(4). Maurin does not require that Robert reject the recovery permitted for his derivative claims and Helen's claims that the estate holds.
¶ 196 Maurin concerned a child who lived for only two days after an occurrence of medical malpractice. Maurin, 274 Wis.2d 28, ¶¶ 10-12, 682 N.W.2d 866. The Maurin lawsuit, which was brought by her estate and her parents, claimed for personal injury, direct and derivative, and her parents claimed for wrongful death, which is also a derivative claim. Id., ¶ 1, 682 N.W.2d 866. We concluded that the legislative plan set out in ch. 655 required that there be a single global cap on the total recovery of noneconomic damages from the collective group of health care providers that were participants in an occurrence of medical malpractice. Id., ¶¶ 52-82, 682 N.W.2d 866.
¶ 197 The Maurins never sought to retain the noneconomic damages for their personal injury claims and to reject the damages awarded for the wrongful death claims. They sought to stack the limits on the recovery of noneconomic damages from the wrongful death claim on top of the limit on recovery of noneconomic damages for their personal injury claims.[9] Similarly, until oral argument, Robert never addressed whether he could have rejected the noneconomic damages awarded for wrongful death and accepted the noneconomic damages for his and the estate's personal injury claims. He sought to stack both caps on the recovery of noneconomic damages, just as the Maurins had. In my view, the legislature has not prevented Robert, individually, and Helen's estate from choosing whichever cap is best for them.
¶ 198 Although many other states have caps on medical malpractice awards for noneconomic damages, the statutes by which they accomplish this vary. However, Michigan does have a statutory limit on the recovery on noneconomic damages that has two differing caps, which caps encompass noneconomic damages for survivors' actions and for wrongful death. Shinholster v. Annapolis Hosp., 471 Mich. 540, 559-60, 685 N.W.2d 275 (2004).
¶ 199 In Shinholster, Betty Shinholster had experienced a number of "ministrokes" before having a massive stroke that caused her death. Id. at 547-48, 685 N.W.2d 275. Michigan has a $280,000 cap on the recovery of all noneconomic damages for all claims unless one of several statutory factors applies. MCL 600.1483(1). Those factors describe the types of disabilities that resulted from the malpractice. MCL 600.1483(1)(a)-(c). If any of the factors set out in MCL 600.1483(a)-(c) apply, the limit on the recovery for noneconomic damages is an aggregate of $500,000. Id. at 560, 685 N.W.2d 275. The question before the *258 court was whether that higher limit could be applied in a wrongful death action or whether the injured person had to survive and endure the disability to be able to recover the higher amount. Id. The court, based on its interpretation of Michigan statutes, concluded that the legislature permitted "a decedent's estate to recover everything that the decedent would have been able to recover had she lived." Id. at 564, 685 N.W.2d 275 (emphasis in original). Accordingly, it permitted the recovery of noneconomic damages totaling $500,000. Id.
¶ 200 Although Shinholster is based on Michigan statutes, the claims addressed are the same as are presented by Robert, individually, and Helen's estate. They involved claims for Betty's predeath pain and suffering that the estate held and claims for her survivors with derivative claims for wrongful death. The court in Shinholster saw no problem in limiting recovery of all noneconomic damages, for all types of claims that arose out of medical malpractice, to one limit. In a similar manner, I agree with Maurin that the legislature did limit the recovery of noneconomic damages to one statutory cap for an occurrence of medical malpractice. I also conclude that the legislature has not directed which cap is to be selected. Therefore, I would reverse the court of appeals and remand to the circuit court for a hearing on which cap is to be applied, the cap set out in Wis. Stat. § 893.55(4)(d) or the cap set out in Wis. Stat. § 895.04(4).

III. CONCLUSION
¶ 201 I conclude that Maurin correctly decided that the legislature created an occurrence-based cap on the recovery of all noneconomic damages that arise from medical malpractice, to which all plaintiffs and all types of claims are subject. However, I also conclude that Maurin does not prevent selecting whichever cap on noneconomic damages the plaintiffs prefer. Accordingly, I respectfully dissent from the lead opinion's decision to overrule Maurin, but I concur in the mandate to reverse the court of appeals.
¶ 202 I am authorized to state that Justices JON P. WILCOX and DAVID T. PROSSER join this concurrence/dissent.

NOTES
[1] Bartholomew v. Wis. Patients Comp. Fund, No.2004AP2592, unpublished order (Wis.Ct. App. Aug. 24, 2005).
[2] The Fund's name was recently changed to "Injured Patients and Families Compensation Fund."
[3] Two defendant doctors were named in the complaint. One of the doctors was found not liable and is therefore not a party to this review.
[4] See Wis. Stat. § 895.04(4) (2003-03) for the wrongful death cap.

All references to the Wisconsin Statutes are to the 2003-04 version unless otherwise stated.
[5] The phrase "wrongful death cap" refers to the amount provided by Wis. Stat. § 895.04(4) as the cap on recovery for noneconomic damages for postdeath claims for loss of society and companionship.
[6] For purposes of the present review, Robert Bartholomew treats the $350,000 he received under the circuit court judgment as satisfying the jury award for noneconomic damages for his postdeath claim for loss of his wife's society and companionship.
[7] The phrase "medical malpractice cap" refers to the amount provided by Wis. Stat. § 893.55(4)(d) as the cap on recovery for noneconomic damages awarded in medical malpractice actions.
[8] Wisconsin Stat. § 893.55(4)(d) (2003-04) provides:

The limit on total noneconomic damages for each occurrence under par. (b) on or after May 25, 1995, shall be $350,000 and shall be adjusted by the director of state courts to reflect changes in the consumer price index for all urban consumers, U.S. city average, as determined by the U.S. department of labor, at least annually thereafter, with the adjusted limit to apply to awards subsequent to such adjustments.
[9] Effective April 6, 2006, the legislature has set new limits for noneconomic damages in medical malpractice cases in § 893.55(4)(d)1. See 2005 Wis. Act 183, § 7 (effective Apr. 6, 2006); see also 2005 A.B. 1073, § 7.

No one argues that the new § 893.55(4)(d) applies retroactively to the instant case. The Act states that it applies to acts or omissions of health care providers after the effective date of the statute, which is April 6, 2006. Both Robert Bartholomew and the defendants argue that the modification of § 893.55(4)(d) supports their interpretations of the medical malpractice and wrongful death statutes. This opinion does not address the 2005 legislation.
[10] Maurin v. Hall, 2004 WI 100, ¶ 128, 274 Wis.2d 28, 682 N.W.2d 866 (Abrahamson, C.J., & Crooks, J., concurring, joined in part by Bradley, J.).
[11] See Justice Butler's concurrence, note 7.
[12] Maurin, 274 Wis.2d 28, ¶ 69, 682 N.W.2d 866. See also id., ¶ 147, 682 N.W.2d 866 (Abrahamson, C.J., & Crooks, J., concurring, joined in part by Bradley, J.).
[13] Johnson Controls, Inc. v. Employers Ins. of Wausau, 2003 WI 108, ¶ 94, 264 Wis.2d 60, 665 N.W.2d 257.
[14] Id., ¶ 96, 665 N.W.2d 257; Schultz v. Natwick, 2002 WI 125, ¶ 37, 257 Wis.2d 19, 653 N.W.2d 266.
[15] State v. Stevens, 181 Wis.2d 410, 442, 511 N.W.2d 591 (1994) (Abrahamson, J., concurring) (internal quotation marks omitted).
[16] Johnson Controls, 264 Wis.2d 60, ¶¶ 98-99, 665 N.W.2d 257 (citing State v. Stevens, 181 Wis.2d 410, 442, 511 N.W.2d 591 (1994) (Abrahamson, J., concurring) and Allied-Signal, Inc. v. Director, Div. of Taxation, 504 U.S. 768, 783, 112 S.Ct. 2251, 119 L.Ed.2d 533 (1992)).
[17] Johnson Controls, 264 Wis.2d 60, ¶ 99, 665 N.W.2d 257.
[18] Id., ¶ 100, 665 N.W.2d 257.
[19] Justice Butler's opinion does not directly discuss stare decisis, but it also concludes that Maurin must be overturned.
[20] See Justice Prosser's concurrence, ¶ 161; Maurin, 274 Wis.2d 28, ¶¶ 10-12, 682 N.W.2d 866; Ferdon ex rel. Petrucelli v. Wisconsin Patients Compensation Fund, 2005 WI 125, ¶ 252, 284 Wis.2d 573, 701 N.W.2d 440 (Prosser, J., dissenting).
[21] See Wis. Stat. § 805.15(6), which states in relevant part:

805.15 New trials.
(6) Excessive or inadequate verdicts. If a trial court determines that a verdict is excessive or inadequate not due to perversity or prejudice or as a result of error during trial (other than an error as to damages), the court shall determine the amount which as a matter of law is reasonable, and shall order a new trial on the issue of damages, unless within 10 days the party to whom the option is offered elects to accept judgment in the changed amount.
[22] The defendants contend that Robert Bartholomew requested this allocation. We cannot find such a request in the record. Regardless, the point remains that the proper method for allocation under Maurin is unclear and not provided for by the statutes.
[23] Maurin, 274 Wis.2d 28, ¶¶ 91-115, 682 N.W.2d 866.
[24] Id., ¶ 116, 682 N.W.2d 866.
[25] Ferdon, 284 Wis.2d 573, ¶¶ 9-10, 701 N.W.2d 440.
[26] Id., ¶¶ 105, 113, 701 N.W.2d 440.
[27] See Maurin, 274 Wis.2d 28, ¶ 13, 682 N.W.2d 866.
[28] Koehler v. Waukesha Milk Co., 190 Wis. 52, 56, 208 N.W. 901 (1926).
[29] Id.
[30] Wis. Stat. §§ 895.03, 895.04(1); see also Maurin, 274 Wis.2d 28, ¶ 131, 682 N.W.2d 866 (Abrahamson, C.J., & Crooks, J., concurring); W. Page Keaton et al., Prosser and Keaton on the Law of Torts § 127, at 946 (5th ed., lawyers ed., 1984).

The wrongful death statutes allow recovery for pecuniary damages and for loss of society and companionship. Wis. Stat. § 895.04(4).
[31] Keaton, supra note 30, § 125A, at 940-41; see generally Wex S. Malone, The Genesis of Wrongful Death, 17 Stan. L.Rev. 1043, 1044 (1964-65).
[32] See ch. 71, Laws of 1857 (first wrongful death statute).

Under the wrongful death statute, no damages were permitted for loss of society and companionship until the statute was amended in 1931. See § 2, ch. 263, Laws of 1931; see also Bernard T. McCartan, Children: Chattels to Chums-Shockley v. Prier, 59 Marq. L.Rev. 169, 170 (1976).
[33] Brown v. Chicago & Nw. Ry. Co., 102 Wis. 137, 140, 77 N.W. 748 (1898).
[34] Keaton, supra note 30, § 125A, at 940-41; see generally Malone, supra note 31, at 1052-76.
[35] Malone, supra note 31, at 1044.
[36] Wisconsin's present "survival statute," Wis. Stat. § 895.01, provides in relevant part:

(1) In addition to the causes of action that survive at common law, all of the following also survive: . . .
. . . .
(g) Causes of action for a violation of § 968.31(2m) or other damage to the person.
Personal injury actions are causes of action for the recovery of "damage to the person" that survive under § 895.01(1). Wangen v. Ford Motor Co., 97 Wis.2d 260, 310, 294 N.W.2d 437 (1980).
Damages "to which a decedent would have been entitled for pain and suffering survive his death and pass to the estate of the decedent." Wangen, 97 Wis.2d at 310, 294 N.W.2d 437 (citing Koehler, 190 Wis. at 55, 208 N.W. 901).
[37] See Harrigan v. Gilchrist, 121 Wis. 127, 340, 99 N.W. 909 (1904); see also Mesar v. Milwaukee Elec. Ry. & Light Co., 197 Wis. 578, 580, 222 N.W. 809 (1929); see generally Malone, supra note 31, at 1045-52.
[38] Koehler, 190 Wis. at 56, 208 N.W. 901.
[39] Id.

"Survival actions," in addition, may refer to the survival of a claim after the death of the tortfeasor. See Wis. Stat. § 895.01. This type of action is not presently before the court.
[40] Keaton, supra note 30, § 126, at 942-43.
[41] Wis. Stat. § 895.04(1); see Keaton, supra note 30, § 127, at 946.
[42] See Keaton, supra note 30, § 127, at 947.
[43] Woodward v. Chicago & Nw. Ry. Co., 23 Wis. 400, 405-06 (1868) (discussing survival and wrongful death actions).
[44] Brown v. Chicago & Nw. Ry. Co., 102 Wis. 137, 142, 77 N.W. 748 (1898).
[45] Id.
[46] Id. at 141, 77 N.W. 748.
[47] Compare Maurin, 274 Wis.2d 28, ¶¶ 28-31, 682 N.W.2d 866, with State Farm Mut. Auto. Ins. Co. v. Langridge, 2004 WI 113, ¶ 51 n. 7, 275 Wis.2d 35, 683 N.W.2d 75 (Eleven days after its decision in Maurin mandated, this court stated, "A wrongful death claim belongs to the surviving spouse, not the deceased's estate."); Petta v. ABC Ins. Co., 2005 WI 18, ¶ 50, 278 Wis.2d 251, 692 N.W.2d 639 (Wilcox, J., concurring) (wrongful death claim separate and distinct from survival claim); Muchow v. Goding, 198 Wis.2d 609, 627, 544 N.W.2d 218 (1995) (Survivors "have an independent claim based upon the wrongful death of their daughter. Their claim is separate and distinct from the claims of the estate to which [the tort victim's] claims have passed under the survival statute."); Weiss v. Regent Props. Ltd., 118 Wis.2d 225, 233, 346 N.W.2d 766 (1984) ("[T]he wrongful death action is separate and distinct from the survival action."); Wangen, 97 Wis.2d at 310-15, 294 N.W.2d 437 (addressing punitive damages separately in context of wrongful death and survival actions); Koehler, 190 Wis. at 56, 208 N.W. 901 (A survival action "is a separate and distinct one from the cause of action purely statutory, . . . which substantially follows the so-called Lord Campbell's Act of England in 1846, abolishing here and there the common-law rule that for the death of a person there could be no damages recovered in favor of any survivor."); Brown, 102 Wis. at 142, 77 N.W. 748 (explaining the distinction between survival and wrongful death actions); Woodward, 23 Wis. at 405-06 (discussing separately survival and wrongful death actions); Estate of Merrill ex rel. Mortenson v. Jerrick, 231 Wis.2d 546, 549-50, 605 N.W.2d 645 (Ct.App. 1999) ("A survival action is distinct from a wrongful death action."); Miller v. Luther, 170 Wis.2d 429, 435-36, 489 N.W.2d 651 (Ct.App.1992) (Wrongful death "is not an action that survives the decedent's death; it is a new action brought for the benefit of the statutory beneficiaries"); Jaeger v. Raymark Indus., Inc., 610 F.Supp. 784, 786 (E.D.Wis. 1985) ("The survival action and the wrongful death action are distinct under Wisconsin law. The survival action is brought by the decedent's estate for the injury to the decedent; the wrongful death action belongs to the named beneficiaries for their injury. `[T]he latter action begins where the former ends.'" (citations omitted)).
[48] The victim's claim for pain and suffering and a family member's claim for predeath loss of society and companionship exist regardless of whether the victim dies.
[49] See Wis. Stat. § 893.55(5)(b) ("Every award of damages under ch. 655 shall specify the sum of money, if any, awarded for each of the following . . . (b) Loss of consortium, society and companionship or loss of love and affection.").
[50] Kottka v. PPG Indus., Inc., 130 Wis.2d 499, 519, 388 N.W.2d 160 (1986).
[51] Schwartz v. City of Milwaukee, 54 Wis.2d 286, 292, 195 N.W.2d 480 (citing Kavanaugh v. City of Janesville, 24 Wis. 618 (1869) and other more recent cases).
[52] Theama v. City of Kenosha, 117 Wis.2d 508, 511-513, 519-28, 344 N.W.2d 513 (1984) (minor child's claim for loss of parent's society and companionship); Shockley v. Prier, 66 Wis.2d 394, 402-05, 225 N.W.2d 495 (1975) (parent's claim for loss of society and companionship of minor child); Ferdon, 284 Wis.2d 573, ¶ 20, 701 N.W.2d 440 (parent's claim for loss of society and companionship of child); Moran v. Quality Aluminum Casting Co., 34 Wis.2d 542, 558, 150 N.W.2d 137 (1967) (wife's claim for loss of husband's society and companionship); Susan M. Knepel, Torts  Child May Recover for Loss of Parent's Society and Companionship, 68 Marq. L.Rev. 174, 174-76 (1984-85); Bernard T. McCartan, Children: Chattels to Chums-Shockley v. Prier, 59 Marq. L.Rev. 169, 170-71 (1976); see also 2 Dan B. Dobbs, Law of Remedies 8.1(5), at 400-03 (2d ed.1993).
[53] See, e.g., Kottka, 130 Wis.2d at 515-20, 388 N.W.2d 160 (court rejects argument that common-law claim for loss of consortium due to injury of spouse is extinguished by death of spouse or alternatively that claim survives but legislature intended to limit amount recovered by wrongful death cap in Wis. Stat. § 895.04(4); contrary to insurer's claim that wife's loss of consortium during last months of husband's life is included in her claim for nonpecuniary wrongful death damages under § 895.04(4), wife permitted to bring action for both pre- and postdeath loss of society and companionship). See also 2 Dan B. Dobbs, Law of Remedies 8.3(5), at 442-43 (2d ed.1993).
[54] Wis. Stat. § 895.04(4).
[55] Wis. Stat. § 893.55(4)(d).
[56] See Maurin, 274 Wis.2d 28, ¶ 18, 682 N.W.2d 866.
[57] Id., ¶¶ 117-234, 682 N.W.2d 866 (Abrahamson, C.J., & Crooks, J., concurring).
[58] Id., ¶ 69, 682 N.W.2d 866. See also id., ¶ 147, 682 N.W.2d 866 (Abrahamson, C.J., & Crooks, J., concurring).
[59] See generally Wis. Stat. §§ 655.001-655.009.
[60] Discussing the legislature's choice of the conjunctive word "and," the Maurin concurring opinion observed:

The text of § 655.017 does not limit recovery to the lesser of either the § 893.55(4)(d) limit for medical malpractice or the § 893.55(4)(f) limit for wrongful death. Rather, § 655.017 directs us to both §§ 893.55(4)(d) and (f) to assess the limits on damages imposed in cases of medical malpractice causing wrongful death.
Section 655.017 recognizes that both the limit on noneconomic damages under Wis. Stat. § 893.55(4)(d) and the limit on wrongful death damages under Wis. Stat. § 893.55(4)(f) are applicable in medical malpractice actions. Had the legislature intended to limit recovery to either the § 893.55(4)(d) limit or the § 893.55(4)(f) limit depending on whether the patient died, it would have used different language.
See Maurin, 274 Wis.2d 28, ¶¶ 181-182, 682 N.W.2d 866 (Abrahamson, C.J., & Crooks, J., concurring).
[61] Ferdon, 284 Wis.2d 573, ¶ 10, 701 N.W.2d 440.
[62] As is explained in the treatise on Wisconsin damage law:

The legislature has limited an injured plaintiff's right to recover damages for pain and suffering in claims against health care providers. A $350,000 cap (to be adjusted at least annually by the director of state courts to reflect changes in the consumer price index) was imposed, effective May 25, 1995, on noneconomic damages, defined to include pain and suffering, in medical negligence cases in which the claim accrued on or after the statute's effective date. Wis. Stat. §§ 893.55(4)(a), (d); 655.017. Wrongful death claims are excepted from this noneconomic loss cap. Wis. Stat. § 893.55(4)(f) . . . . (emphasis added).
1 The Law of Damages in Wisconsin § 5.5, at 3 n. 1 (Russell M. Ware ed., 3d ed.2003).
[63] The title of Wis. Stat. § 895.04 makes clear that the statute applies to a "[p]laintiff in a wrongful death action." Although a title is not determinative of the meaning of the statute, it is informative. State v. Black, 188 Wis.2d 639, 645, 526 N.W.2d 132 (1994) ("In the face of such plain and unambiguous language we must disregard the title of the statute. Consideration of a statutory title may be used only to resolve doubt as to the meaning of the statute.").
[64] See Brown, 102 Wis. at 141, 77 N.W. 748; Kottka, 130 Wis.2d at 515-20, 388 N.W.2d 160; ¶¶ 61, 68, supra.
[65] Maurin, 274 Wis.2d 28, ¶ 35, 682 N.W.2d 866 (emphasis in Maurin opinion).

The Maurin majority opinion also observed that the statement in Jelinek v. St. Paul Fire & Casualty Insurance Co., 182 Wis.2d 1, 11, 512 N.W.2d 764 (1994), that ch. 655 had "set tort claims resulting from medical malpractice apart from other tort claims," "is the complete answer to the otherwise legitimate argument that negligence claims and wrongful death claims are separate and distinct causes of action." Maurin, 274 Wis.2d 28, ¶ 84, 682 N.W.2d 866. As Robert Bartholomew observed in his brief and at oral argument, this comment is not a complete answer because it fails to account for the distinction between actions for wrongful death claims and actions for predeath claims. This opinion does not disrupt the holding that ch. 655 set medical malpractice claims apart from other tort claims by capping claims for noneconomic damages for predeath claims.
[66] See Rineck v. Johnson, 155 Wis.2d 659, 665-69, 456 N.W.2d 336 (1990).
[67] Maurin, 274 Wis.2d 28, ¶ 79, 682 N.W.2d 866 (quoting Memorandum from Don Dyke, Senior Staff Attorney, Wisconsin Legislative Council 2 (Apr. 21, 1998) (on file with Wisconsin Legislative Council, Madison, Wis.)) ("The legislature added the phrase `per occurrence' to make it clear that `in wrongful death medical malpractice actions, the limit is a total limit and does not apply individually to each person who may bring an action for loss of society and companionship.'"). See also Maurin, 274 Wis.2d 28, ¶ 80, 682 N.W.2d 866.

The memorandum states:
Act 89 replaces the current $150,000 limit on damages for loss of society and companionship in wrongful death actions with a $500,000 limit per occurrence in the case of a deceased minor or $350,000 per occurrence in the case of a deceased adult. The new limits apply both to wrongful death actions involving medical malpractice and to other wrongful death actions. Presumably, reference is made to "per occurrence" to provide that in wrongful death medical malpractice actions, the limit is a total limit and does not apply individually to each person who may bring an action for loss of society and companionship. (As noted above, in wrongful death actions not involving medical malpractice, § 895.04(4), Stats., has already been interpreted as applying the current $150,000 limit in the aggregate).
[68] See 1985 Wis. Act 340, §§ 30, 72; Wis. Stat. §§ 655.017, 893.55(4) (1987-88).
[69] Rineck, 155 Wis.2d at 665-69, 456 N.W.2d 336.
[70] Id. at 666-67, 456 N.W.2d 336.
[71] Jelinek, 182 Wis.2d at 9-10, 512 N.W.2d 764.
[72] See 1995 Wis. Act 10, §§ 5, 8, 9, 10; see also 1995 A.B. 36.
[73] Maurin, 274 Wis.2d 28, ¶ 69, 682 N.W.2d 866; see id., ¶ 147, 682 N.W.2d 866 (Abrahamson, C.J., & Crooks, J., concurring).

The court reached a similar conclusion six years ago in Czapinski v. St. Francis Hospital, Inc., 2000 WI 80, ¶ 16, 236 Wis.2d 316, 613 N.W.2d 120: "Section 893.55(4)(f) made applicable to medical malpractice cases the limit on damages for loss of society and companionship that was established in Wis. Stat. § 895.04(4), the wrongful death statute." (footnote omitted).
[74] Applying both the medical malpractice cap and the wrongful death cap to wrongful death claims for postdeath noneconomic loss of society and companionship leads to absurd consequences. From 1998 until Ferdon was decided in 2005, the wrongful death cap for minor children ($500,000) was higher than the "total noneconomic damages cap" for medical malpractice ($350,000 adjusted for inflation). Thus a bigger cap is forced to fit within a smaller cap. The $500,000 cap on wrongful death claims would not be realized in a medical malpractice claim because the cap exceeded the limit for noneconomic damages in medical malpractice.

Thus, under the view taken in Justice Butler's concurrence, the legislature in 1998 passed a statute that resulted in the embedding of the $500,000 cap for the wrongful death of a child into the $350,000 (inflation-adjusted) cap for medical malpractice. Such an interpretation produces an absurd result. See Teschendorf v. State Farm Ins. Cos., 2006 WI 89, ¶ 32, ___ Wis.2d ___, 717 N.W.2d 258 ("Because a literal application . . . would produce an absurd and unreasonable result . . . [the court must] construe the statute to avoid that result."). Justice Butler's concurrence fails to follow the rule of statutory interpretation that courts should construe statutes to avoid absurd results.
[75] The circuit court stated in its July 1, 2004 decision on the various postverdict motions that applying two caps is "commonly referred to as `stacking the caps.'"

The circuit court concluded that the medical malpractice cap and the wrongful death cap should not be "stacked."
The Maurin majority opinion also used the words "stack one on top of the other" to refer to applying both caps. Maurin, 274 Wis.2d 28, ¶ 42, 682 N.W.2d 866.
[76] Black's Law Dictionary 1412 (7th ed.1999) (emphasis added).
[77] The defendants contend that this outcome has the effect of overturning the court's decision in Czapinski v. St. Francis Hospital, Inc., 2000 WI 80, 236 Wis.2d 316, 613 N.W.2d 120. The Czapinski decision governed only who is eligible to bring a cause of action for wrongful death in a medical malpractice case; it did not address the amount of damages those claimants could recover. Czapinski, 236 Wis.2d 316, ¶ 2, 613 N.W.2d 120; see Maurin, 274 Wis.2d 28, ¶ 154, 682 N.W.2d 866 (Abrahamson, C.J., & Crooks, J., concurring). The holdings of the instant case have no effect on Czapinski.
[78] Maurin, 274 Wis.2d 28, ¶ 69, 682 N.W.2d 866; see also id., ¶ 147, 682 N.W.2d 866 (Abrahamson, C.J., & Crooks, J., concurring, joined in part by Bradley, J.).
[79] In addition, even if there were no conflict among claimants, claimants may not be able to control which cap applies. If a claimant states claims based only on predeath injuries, a defendant might defend on the ground that the medical malpractice resulted in death and that, under Maurin, the damages are subject only to the wrongful death cap. Or if the claimant states claims based only on wrongful death, the defense might be that the medical malpractice did not result in death. Under either circumstance the claimant may lose all noneconomic damages. These are issues not addressed by Maurin or this alternative interpretation.
[1] All subsequent references to the Wisconsin Statutes are to the 2003-04 version unless otherwise noted.
[2] Contrary to the statement in Justice Butler's concurrence, I would have this court decide constitutional issues that need to be reached based on recent legislative actions. See Justice Butler's concurrence, ¶ 150 n. 2. I write to address the constitutional infirmity of the erroneous position set forth in Justice Butler's concurrence. Despite his best effort to avoid the constitutional principles involved, his concurrence is unpersuasive when it contains the claim that our decision in Ferdon v. Wisconsin Patients Compensation Fund, 2005 WI 125, 284 Wis.2d 573, 701 N.W.2d 440, makes a constitutional analysis unnecessary. Such a claim ignores the fact that the Wisconsin Legislature has recently enacted a new cap in Wis. Stat. § 893.55(4)(d) (2005-06).
[3] Justice Butler's concurrence, ¶ 154. His concurrence must be met head-on now, since it could conceivably have significant implications, especially if, in the future, this court were to find the recently enacted cap on noneconomic damages in Wis. Stat. § 893.55(4)(d) to be constitutional.
[4] Amendment XIV, Section 1 of the United States Constitution states, in relevant part: "No State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Article I, Section 1 of the Wisconsin Constitution states, in relevant part: "All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted, deriving their just powers from the consent of the governed."
[5] See Maurin v. Hall, 2004 WI 100, ¶¶ 198-202, 274 Wis.2d 28, 682 N.W.2d 866 (Abrahamson, C.J., and Crooks, J., concurring, joined in part by Bradley, J.). States having determined that certain statutory damages caps do unconstitutionally limit a claimant's access to the courts and right to a remedy include Florida, Pennsylvania, Texas, New Hampshire, Maine, and Missouri. Id.
[6] The expense of medical malpractice cases is due, at least in part, to the need for expert testimony. See id., ¶ 209, 682 N.W.2d 866.
[7] Maurin, 274 Wis.2d 28, ¶ 161 n. 41, 682 N.W.2d 866 (Abrahamson, C.J., and Crooks, J., concurring, joined in part by Bradley, J.); see also lead op., ¶ 98 n. 67.
[1] All references to the Wisconsin Statutes are to the 2003-04 version unless otherwise noted.
[2] I do not reach the question of whether, when there are multiple claimants, claims, or awards, the Wisconsin Constitution prohibits reducing a medical malpractice award within an occurrence-based total global cap. See lead op., ¶ 43. Based on how I construe the plain meaning of the statutes in this case, and based on our decision last term in Ferdon v. Wisconsin Patients Comp. Fund, 2005 WI 125, 284 Wis.2d 573, 701 N.W.2d 440, I see no reason to reach the other constitutional issues that Justice Crooks' concurrence would have us decide. Compare Justice Crooks' concurrence. See also State v. Manuel, 2005 WI 75, ¶ 25 n. 4, 281 Wis.2d 554, 697 N.W.2d 811 (citing Gross v. Hoffman, 227 Wis. 296, 300, 277 N.W. 663 (1938)) (only dispositive issues need be addressed). We do not normally decide constitutional questions if the case can be resolved on other grounds. State v. Hale, 2005 WI 7, ¶ 42, 277 Wis.2d 593, 691 N.W.2d 637; Labor & Farm Party v. Elections Bd., 117 Wis.2d 351, 354, 344 N.W.2d 177 (1984). I discern only that the legislature statutorily created an occurrence-based total global cap on the recovery of all noneconomic damages that arise from medical malpractice, and that cap has previously been ruled to be unconstitutional in Ferdon. Under Wis. Stat. § 655.017, "[t]he amount of noneconomic damages recoverable by a claimant . . . is subject to the limits under § 893.55(4)(d) and (f)."
[3] See Strenke v. Hogner, 2005 WI 25, ¶ 29, 279 Wis.2d 52, 694 N.W.2d 296 ("Statutes in derogation of the common law are to be strictly construed."); Kranzush v. Badger State Mut. Cas. Co., 103 Wis.2d 56, 74, 307 N.W.2d 256 (1981) ("Statutes are not to be construed as changing the common law unless the purpose to effect such change is clearly expressed therein. To have such effect the language (of the statute) must be clear, unambiguous and peremptory. . . . The legislative intent to change the common law must be expressed beyond any reasonable doubt." (citations and quotations omitted)).
[4] On March 22, 2006, this subsection was amended. 2005 Wis. Act 183, § 6.
[5] As indicated earlier, I do not reach the question of whether, when there are multiple claimants or multiple awards, the Wisconsin Constitution prohibits reducing a medical malpractice award within an occurrencebased total global cap. See supra, n. 2.
[6] The decision in Maurin v. Hall, 2004 WI 100, 274 Wis.2d 28, 682 N.W.2d 866, is "unsound in principle," as it contradicts the express language of the statute and ignores common law that has not been affected by the creation of Wis. Stat. § 893.55(4)(f). Johnson Controls, Inc. v. Employers Ins. of Wausau, 2003 WI 108, ¶¶ 98-99, 264 Wis.2d 60, 665 N.W.2d 257 (citations omitted). As such, although I disagree with the lead opinion's rationale, I agree that Maurin's holding "that the wrongful death cap in Wis. Stat. § 895.04(4) is the single cap to be applied globally to all noneconomic damages when a victim of medical malpractice action dies should be overruled[.]" Lead op., ¶ 51.
[7] See Strenke, 279 Wis.2d 52, ¶ 29, 694 N.W.2d 296. See also Justice Roggensack's concurrence/dissent, ¶ 184. To the extent that the creation of Wis. Stat. § 893.55(4)(f) does not expressly alter any common law, common law prevails.
[8] "Ours is `a government of laws not men,' and `it is simply incompatible with democratic government, or indeed, even with fair government, to have the meaning of a law determined by what the lawgiver meant, rather than by what the lawgiver promulgated. . . . It is the law that governs, not the intent of the lawgiver. . . . Men may intend what they will; but it is only the laws that they enact which bind us.'" State ex rel. Kalal v. Circuit Court for Dane County, 2004 WI 58, ¶ 52, 271 Wis.2d 633, 681 N.W.2d 110 (citing Antonin Scalia, A Matter of Interpretation 17 (Princeton University Press) (1997) (footnote omitted)).

Contrast Justice Crooks' concurrence, ¶ 136; Justice Roggensack's concurrence/dissent, ¶ 179.
[9] Under subsection (4)(f), recovery for medical malpractice that results in wrongful death is limited to the statutory limit for any other wrongful death claim, established under Wis. Stat. § 895.04(4). Wis. Stat. § 893.55(4)(f).
[10] I agree with Justice Roggensack that the creation of subsection (4)(f) was intended to overrule this court's decision in Jelinek v. St. Paul Fire & Cas. Ins. Co., 182 Wis.2d 1, 14, 512 N.W.2d 764 (1994). The Maurin majority, however, misinterprets the reason for the creation of subsection (4)(f). Maurin v. Hall, 2004 WI 100, ¶¶ 34-35, 274 Wis.2d 28, 682 N.W.2d 866. In my view, subsection (4)(f) created the necessary link that would create a "cap within a cap" that was held to be absent in Jelinek, and made it clear that there was, indeed, a wrongful death cap in medical malpractice actions included within the total global cap.
[11] There is simply no basis under the statutes or common law that would require a plaintiff or different plaintiffs to "pick and choose" which cap is best for them, or for the circuit court to decide which cap should be applied. See Roggensack's concurrence/dissent, ¶¶ 197, 200.

I also note that were the court to follow the approach advocated by Justice Roggensack in her concurrence/dissent, whereby claimants must choose between the different caps on noneconomic damages, such a choice would implicate those constitutional concerns raised by Justice Crooks in his concurrence. Justice Crooks' concurrence, ¶ 132.
[12] This ruling resolves the concerns raised in the lead opinion about the absurdity of trying to fit the wrongful death cap for minor children post-1998 into the "total noneconomic damages cap" for medical malpractice as adjusted in this case. See lead opinion, ¶ 110 n. 73.
[1] The child was conscious for less than 24 hours after the misdiagnosis.
[1] All subsequent references to the Wisconsin Statutes are to the 2003-04 version unless otherwise noted.
[2] The cap on noneconomic damages established in Wis. Stat. § 893.55(4)(d) was held unconstitutional in Ferdon v. Wisconsin Patients Compensation Fund, 2005 WI 125, 284 Wis.2d 573, 701 N.W.2d 440.
[3] The lead opinion asserts that it is not authorizing stacking of caps because stacking applies when there is only one claim and here there is more than one claim. Lead op., ¶¶ 117-18. I disagree. What the lead is endorsing is the stacking of the recovery of damages for direct and derivative claims arising out of an occurrence of medical malpractice where only one person suffers a direct injury from medical malpractice. In my view, this is no different from stacking insurance policy limits to cover direct and derivative claims arising out of an automobile accident.
[4] Wisconsin Stat. § 893.55(4) is tied to ch. 655 because the claims arose out of medical malpractice.
[5] Wisconsin Stat. § 655.007 provides:

On and after July 24, 1975, any patient or the patient's representative having a claim or any spouse, parent, minor sibling or child of the patient having a derivative claim for injury or death on account of malpractice is subject to this chapter.
[6] Wisconsin Stat. § 893.55(4)(f) provides:

Notwithstanding the limits on noneconomic damages under this subsection, damages recoverable against health care providers and an employee of a health care provider, acting within the scope of his or her employment and providing health care services, for the wrongful death are subject to the limit under § 895.04(4).
[7] This court's decision in Ferdon, decided in the term after Maurin, did not reach Maurin's global cap. Ferdon, 284 Wis.2d 573, ¶¶ 35-36, 701 N.W.2d 440.
[8] If the lead opinion becomes the law of Wisconsin, there would be nothing to prevent Robert from commencing a wrongful death action years after the initial personal injury action had been concluded and payments made.
[9] The jury awarded noneconomic damages of $550,000 in the personal injury action and noneconomic damages of $2,500,000 for the parents' wrongful death claim. Maurin v. Hall, 2004 WI 100, ¶ 13, 274 Wis.2d 28, 682 N.W.2d 866.